## HOOKER v. COMMISSIONER OF INTERNAL REVENUE.

### No. 12532.

United States Court of Appeals
Fifth Circuit.

May 30, 1949.

864

John C. Parsons, Hartford, Connecticut, for petitioner.

L. W. Post, George A. Stinson, Ellis N. Slack, Helen Goodner, Sp. Assts. to Atty. Gen., Washington, D. C., Theron Lamar Caudle, Asst. Atty. Gen., Charles Oliphant, Chief Counsel, Bur. Int. Rev., Charles E. Lowery, Sp. Atty., Bur. Int. Rev., Washington, D. C., for respondent.

Before SIBLEY, HOLMES, and Mc-CORD, Circuit Judges.

SIBLEY, Circuit Judge.

The petitioner, during the year 1943, added to a trust for his minor son property of a value of $159,355. A gift tax was assessed on all of it, except what was determined to be the value of the son's right to receive the income for his support and education for the year between the date of the transfer and the son's coming of age. The Tax Court sustained the tax. 10 T.C. 388.

The story briefly told is this: Petitioner Hooker at age twenty-one married, and had a son born April 7, 1923, and a daughter

born Jan. 14, 1925. She died July 2, 1940. Petitioner and his wife were separated in 1935. Petitioner's mother, who seems to have had the wealth of the family, gave petitioner $250,000 in April, 1935. On Aug. 10, 1935, petitioner transferrred to his wife securities valued at $49,375, and on Aug. 26, 1935, entered into a formal separation settlement pursuant to which he paid her $15,-000 more, and transferred to two trusts created for the son and daughter $97,980 each. All these he reported in a gift tax return and on them a gift tax was assessed; but on application for refund the Commissioner held that the property transferred in satisfaction of the wife's claim for maintenance and support was not taxable as a gift; and that the present worth of the income of the property transferred for the support and education of the children until their arrival at majority ought also to be eliminated. Refund of the greater part of the tax was accordingly made. That tax is not now in dispute.

On Oct. 19, 1935, petitioner's wife obtained a decree of absolute divorce in Nevada, the matrimonial domicile having been in Connecticut, but petitioner appeared personally; and in the divorce decree the court referred to the separation settlement of Aug. 26, 1935, as "settling the property rights of the plaintiff and defendant and all matters concerning the care, custody and support of the minor children" and adjudged that it be "ratified, adopted and approved in all respects with the same force and effect as if said agreement were annexed hereto and set out in full in haec verba as a part hereof". Both petitioner and his former wife were remarried by January, 1937.

Petitioner's mother died testate in March, 1939, leaving absolutely to petitioner one-half of her residuary estate, his share being $478,100. The separation settlement, adopted into the divorce decree, contained an agreement in Par. 3 to the effect that petitioner would put in trust for the two children one-third of all amounts that he might receive from his mother in her life or after her death, either by adding them to the trusts created Aug. 26, 1935, or by making new trusts essentially similar. Petitioner failed to do this, and was sued by the former wife and the son (the daughter having died, and her trust under its terms having been merged into that of the son) for a specific performance of the agreement. The Supreme Court of Errors of Connecticut confirmed such a decree, Hooker v. Hooker, 130 Conn. 41, 32 A.2d 68. Thereupon petitioner, during 1943, transferred one-third of what he received from his mother's estate, $159,366, to the son's trust, and it was taxed as above stated.

 1. The gift tax is imposed by Internal Revenue Code, Sects. 1000 and 1001, 26 U.S.C.A. §§ 1000, 1001. Sect. 1002 is here controlling. It requires that "Where property is transferred for less than an adequate and full consideration in money or money's worth" the value in excess of such consideration "shall * * * be deemed a gift". This transfer was made under compulsion of the Connecticut court's decree, but that decree only enforced a precedent contract. As respects taxability, the transfer takes its nature from the contract. It is further argued that the Nevada divorce decree has some controlling force here. The divorce court had jurisdiction to fix a proper alimony for the wife and support for the children. It did not do so directly and independently but "ratified, adopted and approved in all respects" the agreement of Aug. 26, 1935, made between petitioner and his wife, of which the children were also beneficiaries, as "fair, just and equitable to the plaintiff, the defendant and the minor children". The agreement covers eleven printed pages and the trusts it sets up cover thirty pages more. The trusts extend not only to the use of the income during the minority of the children for their support, but also to the devolution of the corpus after their deaths, to spouses, children or in default of these to their mother, or if she does not survive to petitioner or his heirs. The agreement in its last paragraph even provides that Mr. and Mrs. Hooker can by joint writing alter and amend or revoke or terminate the provisions as to future trusts, under which the transfer in controversy here was made. The divorce court, having jurisdiction to fix alimony for the wife and support for the children, could thereby bind the United States in respect of their proper amount, but it probably would have

had no jurisdiction to decree the future settlement of the family property in trusts of the complicated sort agreed upon. The original trusts were in fact in existence and operative when the decree was made and in ratifying them as affording a proper support for the children and an adequate settlement with Mrs. Hooker for herself, the court acted within its powers. But the trusts provided for the use of the income alone for support and maintenance, without encroachment on the corpus, and the addition to it in 1943 fell under the same provisions. The divorce decree ratifies the agreement in all respects, so that at last we come to consider the meaning of the agreement, and of the trust provisions which are a part of it, as the criterion of the case.

**2.** Paragraph 2 of the agreement is explicit as to Mrs. Hooker: "Mr. Hooker has paid to Mrs. Hooker simultaneously with the execution of this agreement the sum of $15,000, the receipt of which is hereby acknowledged, and said sum is accepted by Mrs. Hooker in full satisfaction of the obligation of Mr. Hooker to support and maintain her". She had sixteen days before received securities valued at $49,375 which have been treated as paid additionally for alimony and have gone untaxed. This provision we think covers all that the agreement gives her for alimony. She had contingent interests in the trusts for the son and daughter on their death without spouse or children, but these are no part of her alimony settlement.

**3.** The next paragraph of the agreement is: "3. In order to provide for the maintenance and support of the children of the parties Mr. Hooker has created simultaneously with the execution of this agreement two certain trusts * * * under which the said children of the parties are beneficiaries. Reference is hereby made to said trust agreements for the full terms and conditions thereof. It is the desire and intention of Mr. Hooker that the provisions for the support and maintenance of his said children shall in the future be augmented". Then follow three pages of provisions about the augmentation, dealing with all phases of his mother's possible action about her property, out of which the augmentation was to come. Nowhere in these provisions for the children is Mrs. Hooker even mentioned. The following paragraphs deal with the custody and visitation of the children, the use of the residence, mutual releases by Mr. and Mrs. Hooker of all rights in each other's estates or right to act as personal representative, and the preservation of their right to seek divorce. We do not think there was any intention to make the incidental and contingent advantages that might accrue to Mrs. Hooker out of the trusts for the children any part of her alimony.

**4.** The discharge by Mr. Hooker of his obligation imposed by law to provide alimony for his wife and support and education for his children is conceded to be money or money's worth to him, and has been so treated throughout. The surrender by Mrs. Hooker of her possible dower or other marital rights in Mr. Hooker's estate cannot be considered in this connection a full and adequate consideration in money or money's worth. Merrill v. Fahs, 324 U.S. 308, 65 S.Ct. 655, 89 L.Ed. 963; nor, if considered, is there any evidence of what they were worth. The Commissioner has rightly held that in the transfer in 1943 Mr. Hooker discharged no alimony obligation to his former wife, because she had been fully settled with in 1935; and he has not questioned the allowance of the full income from the property as a proper support for the surviving son who was receiving also the income from both the original trusts. Under all the trusts income only was available for support, not the corpus. All value transferred above the equivalent of the support was a taxable gift. Petitioner has discharged his alimony obligation to his former wife and has supported his children during minority and been allowed credit therefor. The son as primary beneficiary, now of age, has the corpus of all the trust property intact. No wrong has been done in taxing this last addition to it, less the year's income during his minority.

Judgment affirmed.