In the Matter of the Estate of WILLIAM D. HOWE, Deceased.

Surrogate's Court, Nassau County, July 27, 1954.

*Mortimer M. Kassell, Leon Shaw* and *Miriam Wernick* for State Tax Commission.

BENNETT, S. This is an appeal by the executors from a *pro forma* taxing order of this court dated August 25, 1953, which order was in accordance with the appraiser's report.

The decedent died on November 7, 1948, leaving a last will and testament which was duly admitted to probate by this court on November 24, 1948.

On August 14, 1941, after protracted arm's length negotiations, the decedent and his wife entered into a separation agreement. The following is a summary of the pertinent provisions contained therein: 1. Paragraph 5(a) required decedent to make annual payments to his wife of $60,000 and to each of his two daughters of $25,000 as long as decedent's father lived. These sums were expressly stated to be for the support and maintenance of the wife and the daughters. 2. Paragraph 5(b) required decedent to amend a trust, previously created by him, providing for his wife and his daughters after the death of his father. 3. Paragraph 5(c) required decedent to transfer to his

two daughters one half of his share of certain personal property in Florida when he received such property from the estate of James Deering. 4. Paragraph 5(d) required decedent to leave one third of his estate after certain specified deductions to his daughters in equal shares. 5. Under paragraph 8 the wife released decedent from all claims for support and maintenance, except as provided in the agreement, and agreed not to make any claim for alimony if divorce proceedings were instituted. 6. Under paragraph 9 each party released any claim of dower rights in the property of the other, renounced any right of administration upon the estate of the other, and waived any right of election to take against the last will and testament of the other party. 7. Paragraph 11 provided that legal proceedings for a divorce should not impair the validity of the agreement.

Approximately three months after the separation agreement was executed, a final decree of divorce was entered in the Second Judicial Court of Washoe County, Reno, Nevada, which adopted the foregoing agreement and incorporated it by reference in said decree. At the time that the divorce decree was entered, decedent's daughters were aged eighteen and fourteen years respectively.

Decedent by his will bequeathed to his daughters, equally, one third of his estate.

The ancillary executor of the decedent's estate in Florida sought leave to sell decedent's interest in certain Florida real and personal property which he had acquired from the estate of James Deering. In said proceeding it was established that decedent's daughters had a claim, lien or charge, upon decedent's interest in the personal property to the extent of 50%. An order was entered on December 7, 1949, in the court of the County Judge, Dade County, Florida, authorizing the sale and directing the ancillary executor to pay $32,000 of the proceeds thereof to each of decedent's two daughters '' in full settlement of their respective claims, liens and charges upon the personal property ''.

By reason of the foregoing, decedent's daughters were entitled to approximately $2,033,615.50 under the terms of his will, and $64,000 representing one half of decedent's share of the personal property received from the estate of James Deering pursuant to the aforesaid order.

The estate tax appraiser duly made a report to the Surrogate on August 25, 1953, in which he disallowed any deduction for the property transferred to decedent's daughters under the

will and for their interest in the Florida property. A *pro forma* taxing order was made on August 25, 1953, in accordance with the appraiser's report. Said order determined the gross estate to be $11,740,371.39, the allowable deductions to be $1,394,731.74, and the tax to be $1,402,627.93. From said order the executors have appealed on the ground that additional deductions of $2,097,615.50 are allowable.

Upon the appeal, a stipulation of facts was offered in evidence which included a copy of the claim filed by one of decedent's daughters with respect to the Florida personal property, a copy of the order allowing said claims, and the provisions of sections 9462 and 9463 of the Laws of the State of Nevada. In addition, there were offered in evidence a copy of the separation agreement, the findings of fact of the Nevada court, and the divorce decree.

Testimony was also offered by decedent's attorney and the attorney for decedent's wife with respect to the negotiation of the separation agreement. Such testimony was to the effect that the negotiations were carried on directly by the two attorneys; that the negotiations continued for several months; that the original offer for a fifty-fifty division of decedent's property was refused; that an agreement was finally negotiated; that the agreement took care of the wife and children; that the agreement was signed and held in escrow by Mrs. Howe's attorney until the divorce; that Mrs. Howe went to Reno after the agreement was signed; that the agreement so held by Mrs. Howe's attorney was delivered to Mrs. Howe after the decree of divorce; that the decedent made some of the transfers required under the agreement after it was delivered, and that Mrs. Howe's attorney told decedent's attorney that she would not make any settlement unless he made a financial settlement on the children.

It is conceded that the claims made by the decedent's daughters against the Florida personal property are valid and enforcible by the daughters, and that the decedent's failure to have made the bequests of one third of his estate to his daughters would have given his daughters a valid and enforcible claim against his estate.

The question before the court, however, is whether or not the claims of the daughters are deductible for estate tax purposes pursuant to section 249-s of the Tax Law. In considering this question the court must determine, first whether the claims of the decedent's daughters above referred to arose under the decree of divorce or under the separation agreement; second, if the said claims arose under the separation agreement, was

such an agreement founded on an adequate consideration in money or money's worth, and third, are the claims of the daughters against the Florida property deductible under section 249-s since they are charges or liens on personal property which is not subject to the New York estate tax.

The allowance of the claimed deductions is governed by section 249-s of the Tax Law. Said section provides in part as follows: "For the purpose of the tax the value of the net estate shall be determined by deducting from the value of the gross estate: 1. Such amounts * * * (c) for claims against the estate, (d) for * * * any indebtedness in respect to, property where the value of decedent's interest therein, undiminished by such * * * indebtedness, is included in the value of the gross estate, as are allowed by the laws of this state * * *. The deduction herein allowed in the case of claims against the estate * * * shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth ".

A guide for determining whether a claim is supported by an adequate and full consideration in money or money's worth is contained in paragraph 12 (now 13) of section 249-r of the Tax Law in effect on November 7, 1948, the date of decedent's death. Said paragraph provided as follows: "For the purposes of this article, a relinquishment or promised relinquishment of dower, curtesy or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration ' in money or money's worth '."

Petitioners contend that the claims of decedent's daughters arise under the divorce decree and are therefore deductible, even though not based on a consideration in money or money's worth, since this requirement applies only to claims based on a promise or agreement.

An analysis of the facts clearly demonstrates that their claims arise under the separation agreement rather than from the divorce decree, and are accordingly not deductible unless based on the statutory consideration.

Paragraphs 5(a) and 5(b) of the agreement provide for the support of decedent's wife and children. In addition, paragraph 5(d) of the agreement requires decedent to leave one third of his estate to his two daughters in equal shares. This agreement was incorporated by reference in the divorce decree.

The State Tax Commission submits that despite the fact that the separation agreement was incorporated in the divorce decree, the obligations thereunder nevertheless stemmed from the agreement rather than from the decree.

The bequests were made pursuant to the agreement which obligated decedent to make testamentary dispositions to his daughters. Such an agreement, if in writing and signed by the person to be charged therewith, is enforcible by an action for specific performance after the death of decedent. The agreement when made thus created a valid obligation which was enforcible after decedent's death.

This was emphasized by paragraph 11 of the agreement which provides as follows: "11. Legal proceedings for a divorce of the Parties hereto in any jurisdiction on any lawful ground existing before the date of this agreement or arising subsequently shall not impair the validity of this agreement or any lawful term thereof. The terms of this agreement shall at all times remain in force in so far as they do not conflict with any order or decree made by any court of competent jurisdiction in the premises."

In view of the foregoing even though a subsequent decree of divorce if obtained might limit the separation agreement, it is clear that the separation agreement as soon as it was signed created the obligation of the parties. Its validity was not dependent in any way upon the entry of a divorce decree. It would have been enforcible even if no divorce decree had ever been entered. The divorce decree added nothing to the enforcibility of the agreement. At most, it added an additional sanction.

This was recently pointed out by the United States District Court, Southern District of New York, in *Bank of New York* v. *United States* (115 F. Supp. 375). That case involved the inclusion in the gross estate of certain insurance policies transferred to decedent's widow pursuant to the terms of a separation agreement which was incorporated in a divorce decree of a Nevada court. The inclusion thereof depended upon whether the claim to the policies was based on the divorce decree or the separation agreement. In holding that the claim stemmed from the separation agreement, the court stated as follows (p. 384): "In the case at bar the separation agreement became enforceable when it was signed by the parties. The agreement created the rights of the respective parties. It did not require a court decree in any matrimonial action to give effect to the agreement. The agreement was effective both before and after the court decree. At best the Nevada court decree afforded an additional sanction. The decree was not the sole sanction."

Similarly, in an action for a refund of gift taxes on a transfer of property pursuant to a separation agreement which was incorporated in a divorce decree, the United States District Court, Northern District of West Virginia, in *Krause* v. *Yoke* (89 F. Supp. 91), held that the transfers stemmed from the separation agreement rather than from the divorce decree.

Similarly in *Rosenthal* v. *Commissioner of Internal Revenue* (205 F. 2d 505), the court held that transfers to decedent's children under a separation agreement incorporated in a divorce decree stemmed from the agreement. In his opinion Judge CLARK said (p. 508): "We therefore conclude that the arrangements here made for the taxpayer's daughters beyond their support during minority do not obtain exemption from the federal gift tax by simply receiving the court's imprimatur."

Parol evidence that the agreement was to be effective only if there were a decree of divorce would be admissible even if it varied the terms of the written agreement, because the State Tax Commission is not a party or a privy of a party to the written instrument in question and does not base a claim on the instrument or assert a right originating in the instrument or the relation established thereby. (*Cooper Foundation* v. *O'Malley*, 121 F. Supp. 438; *Scofield* v. *Greer*, 185 F. 2d 551; *United States* v. *Patterson*, 206 F. 2d 433; *Stern* v. *Commissioner of Internal Revenue*, 137 F. 2d 43.)

However, the testimony in the instant case that the attorney for the decedent's wife held the agreement until after the decree of divorce and then delivered the same to the wife of the decedent, does not establish that the agreement was only to be effective in the event of a decree of divorce.

Petitioners' contention that the claims resulted from the divorce decree rather than the separation agreement is apparently an afterthought. It is significant to note that decedent's daughter filed a claim in Florida to certain personal property of decedent. Paragraphs 7 and 8 thereof base her claim entirely on the provisions of the separation agreement. No mention whatsoever of the divorce decree is made in said claim.

Petitioners' contention is based principally on the decision in *Harris* v. *Commissioner* (340 U. S. 106). An analysis of this case will indicate that it has a very limited application and is wholly inapplicable at bar.

In the *Harris* case, during the pendency of a divorce action, the husband and wife executed an agreement dividing their property interests. Under the terms of the agreement, the

property transferred to the husband exceeded that transferred to the wife by $107,150. The agreement contained the following provision (p. 110) : " ' It is of the essence of this agreement that the settlement herein provided for shall not become operative in any manner nor shall any of the Recitals or covenants herein become binding upon either party unless a decree of absolute divorce between the parties shall be entered in the pending Nevada action.' "

The subsequently entered divorce decree approved the agreement and directed a performance of its terms. Under such circumstances, the Supreme Court held that the transfers were founded not on a voluntary promise or agreement but on the command of the divorce decree.

It is thus clear that the *Harris* case is applicable only to cases involving agreements which did not become effective when signed and were dependent for their enforcibility upon the entry of a divorce decree.

Furthermore, the agreement provided that the parties relinquish certain marital rights. As was pointed out in petitioners' memorandum, if the agreement was not to be effective unless the divorce was obtained, this provision would be meaningless since a divorced wife has no such rights to relinquish. The wife also agreed not to make any claim for alimony in any divorce proceeding. Such provision would be unnecessary if the agreement was not to be effective until a divorce decree was entered. A perusal thereof indicates that it is a carefully prepared agreement, obviously drawn by attorneys well skilled in the law. They surely would not have included meaningless provisions therein. Accordingly, the inclusion of the foregoing provisions in the agreement clearly negatives any inference that it was not to be effective unless and until a divorce was obtained.

In view of the foregoing, it is clear that the agreement in question was effective immediately, and the *Harris* case is not applicable to it.

In *Rosenthal* v. *Commissioner of Internal Revenue (supra)*, the court pointed out a further limitation to the *Harris* case. It indicated that it does not apply to agreements which created obligations which the divorce court would not have power to impose in the absence of the consent of the parties, such as support of adult children (p. 508).

A similar holding was made in *Hooker* v. *Commissioner of Internal Revenue* (174 F. 2d 863), to the effect that provisions in a separation agreement adopted by a divorce decree with respect to the disposition of decedent's property to his adult

son did not stem from the decree but from the agreement, although the provisions with respect to support of the son during his minority might be considered to stem from the decree.

The agreement in question clearly created obligations with respect to the daughters which the Nevada court had no power to impose. The daughters were approximately fourteen and eighteen years of age at the time of the entry of the decree. Accordingly, under section 9462 of the Nevada Laws, the court, in granting the divorce, had power to require the decedent to continue to support the younger of them for a maximum of seven years. The agreement contained provisions for annual payments to them for life, expressly stated to be for their support, and in addition required decedent to make bequests to them. In accordance with the *Rosenthal* case, any provisions in the decree imposing an obligation over and beyond the support of minor children depend for their validity upon the consent of the parties.

Accordingly, it is clear that the bequests to decedent's daughters stemmed from the voluntary agreement rather than from the divorce, and are therefore not deductible unless based on an adequate and full consideration in money or money's worth.

Conceding that the claims to the daughters of the decedent are the type of claims referred to in section 249-s of the Tax Law, of which there is some doubt (*Matter of Kidd*, 188 N. Y. 274; *Matter of Tannenbaum*, 258 App. Div. 285; *Matter of Searles*, 82 N. Y. S. 2d 219; *Matter of Hoyt*, 174 Misc. 512; *Matter of Taylor*, 95 N. Y. S. 2d 459, 116 N. Y. S. 2d 314), are such claims founded on a consideration in money or money's worth and therefore entitled to a deduction thereunder?

Said section provides that a claim against the estate even if founded upon a promise or an agreement is deductible only to the extent that the promise or agreement was bona fide and based upon an adequate and full consideration in money or money's worth.

The section contains no definition of what constitutes consideration in money or money's worth. It is the policy of the courts of this State to follow decisions of the Federal courts in construing effects of a comparable Federal statute (*Matter of Luke*, 75 N. Y. S. 2d 572). A review of the legislative history of a similar provision in the Federal Estate Tax Law from which this section was derived will be helpful.

The Revenue Acts of 1916, 1918 and 1921 permitted the deduction of claims allowed by the jurisdiction under which the estate was being administered. Under such provisions, claims were

deductible if they were enforcible under State law irrespective of consideration. The Act of 1924 limited the deduction for claims to those incurred or contracted bona fide and for a fair consideration in money or money's worth. The Act of 1926 from which section 249-s was derived substituted the words " adequate and full consideration " for " fair consideration ".

It is clear that the purpose of this amendment was to narrow the class of deductible claims (*Taft* v. *Commissioner*, 304 U. S. 351). It has been pointed out in numerous cases construing this provision that it was primarily intended to prevent any deduction for what are in reality gifts or testamentary dispositions under the guise of " claims " (*Carney* v. *Benz*, 90 F. 2d 747; *United States* v. *Mitchell*, 74 F. 2d 571). In *Latty* v. *Commissioner of Internal Revenue* (62 F. 2d 952, 954), the Circuit Court of Appeals set forth a clear statement of the intent of Congress in enacting this provision as follows: " but we think that ordinarily these words must be construed to evidence an intent upon the part of Congress to permit the deduction of claims only to the extent that such claims were contracted for a consideration which at the time either augmented the estate of the decedent, granted to him some right or privilege he did not possess before, or operated to discharge a then existing claim, as for breach of contract or personal injury."

That case establishes the following tests which have frequently been applied by the courts for determining whether consideration was in money or money's worth: 1. Did it augment the estate of the decedent? 2. Did it grant him some right or privilege he did not possess before? 3. Did it discharge an existing claim against him, as for breach of contract or personal injury?

In accordance with the foregoing, if the claim arises under an agreement which did not augment the estate of decedent or grant him some right or privilege he did not possess before, it was held not to be based on consideration in money or money's worth. The following are some examples of nondeductible claims: 1. A claim by decedent's nieces based on their promise to refrain from marriage until they were twenty-five (*Nicholas* v. *Commissioner of Internal Revenue*, 40 B. T. A. 1040). 2. A claim based on decedent's promise to contribute to his sister's living expenses. (*Friedman* v. *Commissioner*, 3 T C M [C. C. H.] 180). 3. A claim based on an agreement to make a trust for a child on the promise that she would not contest his will (*Latty* v. *Commissioner of Internal Revenue, supra*). 4. A claim based on a promise by decedent to make a transfer to a

trust fund in consideration of his daughter's marriage (*Central Union Trust Co. of N. Y.* v. *Commissioner of Internal Revenue,* 24 B. T. A. 296).

On the other hand, where the claim was based on an agreement under which services were rendered to decedent, it was held to be deductible. (*Littauer* v. *Commissioner of Internal Revenue,* 25 B. T. A. 21; *Nashville Trust Co.* v. *Commissioner of Internal Revenue,* 136 F. 2d 148.)

In addition, deductions are also allowed for claims which discharged a legal liability of decedent imposed by contract or statute. Accordingly, a deduction was allowed for a claim based on decedent's statutory liability as a stockholder for debts of a corporation (*Smith* v. *United States,* 16 F. Supp. 397; *Hays* v. *Commissioner of Internal Revenue,* 34 B. T. A. 808). Similarly claims based on decedent's liability as indorser of a note or a guarantor of loans were held to be deductible (*Commissioner of Internal Revenue* v. *Porter,* 92 F. 2d 426; *McCoy* v. *Rasquin,* 102 F. 2d 434).

In view of the legal obligation to support children, any transfer or claim based on a contract fixing liability for the support of children during their minority discharges a legal obligation and is therefore deemed to be based on consideration in money or money's worth for estate and gift tax purposes (*Commissioner of Internal Revenue* v. *Weiser,* 113 F. 2d 486; *Helvering* v. *United States Trust Co.,* 111 F. 2d 576; *Phillips* v. *Commissioner of Internal Revenue,* 36 B. T. A. 752).

However, any such obligation terminates when the children reach majority. Accordingly, any transfer or claim for support of adult children, or over and beyond the needs of children during their minority, does not discharge a legal obligation. Such claims are therefore held not to be deductible since they are not based on consideration in money or money's worth (*Rosenthal* v. *Commissioner of Internal Revenue,* 205 F. 2d 505, *supra; Matter of Markwell* v. *Commissioner of Internal Revenue,* 112 F. 2d 253; *Hooker* v. *Commissioner of Internal Revenue,* 174 F. 2d 863, *supra*).

An application of the afore-mentioned tests to the claims in question will clearly demonstrate that they were not made for a consideration in money or money's worth.

The claims are made pursuant to a separation agreement. Under the terms thereof, the estate of the decedent was not augmented in any way, nor did it grant him any right or privilege which he did not previously possess. An analysis of the

agreement will further demonstrate that the claims were not made to discharge any legal obligation of decedent.

Paragraph 5(a) of the separation agreement provides for annual payments of $60,000 to decedent's wife and for annual payments of $25,000 to each of his two daughters during the life of decedent's father. It expressly provided that " the sums so paid shall be for the support and maintenance of the Second Party (decedent's wife) and for the support, maintenance and education of the said children." Further provisions are included in paragraph 5(b) of the said agreement for the support of the decedent's wife and daughters after the death of decedent's father through the amendment of a trust previously created by the decedent.

At the time of the execution of the agreement, decedent was legally obligated to support his wife and to support his children until they reached majority. At that time his daughters were fourteen and eighteen years of age respectively. Therefore, his obligation for the support of his younger daughter would be terminated in seven years.

The afore-cited provisions in the agreement for annual payments to decedent's wife and children were expressly stated to be for the support and maintenance of the wife and for the support, maintenance and education of the children. They were thus clearly intended to discharge his legal obligation to support them.

Over and beyond this obligation, decedent obligated himself to make the gifts and bequests to his daughters. At the date of his death, they were twenty-one and twenty-five years of age respectively, and at that time there was no obligation on his part to support them. There can be no doubt, therefore, that the gifts and bequests herein were not made to discharge any legal obligation to support them. They would, therefore, not be deductible unless they were based upon some other consideration in money or money's worth.

The only other consideration set forth for the obligations undertaken by the parties is contained in paragraph 9 of the agreement. This paragraph expressly provides that each party to the agreement releases all dower rights in the property of the other, releases any right of administration upon the estate of the other, and waives any right of election to take against the last will and testament of the other. The rights relinquished in this paragraph clearly fall within paragraph 12 (now 13) of section 249-r of the Tax Law and therefore do not constitute consideration in money or money's worth.

In view of the foregoing, it is clear that the claims were made pursuant to an agreement, which claims were not based on an adequate and full consideration in money or money's worth and, accordingly, are not deductible under section 249-s of the Tax Law.

While the foregoing completely demonstrates that no deduction is allowable for any of the " claims " of the daughters, there is a subordinate ground for disallowing their claims with respect to the Florida personal property. Such claims are not deductible under section 249-s since they are charges or liens on personal property which is not subject to the New York estate tax (*Matter of Gallatin,* 188 Misc. 54, affd. 273 App. Div. 870, affd. 298 N. Y. 812).

Section 249-r of the Tax Law specifically excludes from the gross estate real property and tangible personal property having an actual situs outside the State. Such property is so excluded because under decisions of the Supreme Court of the United States such property is subject to death taxation only where it is situated (*Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194; *Frick* v. *Pennsylvania,* 268 U. S. 473).

The appeal is dismissed and the order of August 25, 1953, is ratified and confirmed. Submit decree on notice in accordance herewith.