**CHEMICAL BANK NEW YORK TRUST COMPANY, as Executor of the Estate of William Deering Howe, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

United States District Court
S. D. New York.

Jan. 5, 1966.

452

Shearman & Sterling, New York City, for plaintiff; Thomas P. Ford, W. Foster Wollen, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty., for Southern District of New York, for defendant; Laurence Vogel, Bruno Lederer, Asst. U. S. Attys., of counsel.

LEVET, District Judge.

This is an action for the recovery of federal estate taxes alleged to have been illegally and erroneously collected. Jurisdiction is premised on 28 U.S.C. § 1346(a)(1). Each side has moved for summary judgment. Certain facts have been stipulated.

1. William Deering Howe (hereinafter called "the decedent") married Polly Brooks Howe in New York, New York, on June 27, 1921. Two children were born of the marriage, to wit, Cynthia Brooks Howe, born July 27, 1923, and Priscilla Cotton Howe, born September 15, 1927.

2. In early 1940, certain disputes arose between the decedent and his wife. The decedent and his wife separated and began negotiations in an effort to arrive at a property settlement.

3. After protracted negotiations, on August 14, 1941, in New York City, an agreement (hereinafter called "the separation agreement") was entered into by decedent and his wife, Polly Brooks Howe.

4. Approximately one week after the signing of the separation agreement Mrs. Howe moved to Crystal Bay, Washoe County, Nevada, for the purpose, among others, of initiating a divorce proceeding against the decedent.

5. A divorce proceeding was initiated by Mrs. Howe in the Second Judicial District Court, Washoe County, Reno, Nevada, in which the decedent appeared personally by his attorney. These proceedings culminated in a decree of absolute divorce entered on or about October 3, 1941.

6. The agreement of August 14, 1941 began with the declaration that:

"It shall be lawful for each of the Parties at all times hereafter to live separate and apart from one another, free from all marital obligations so far as legally permissible, as if each were single, sole and unmarried."

The agreement then provided that the custody of the children during minority be in Polly Brooks Howe and that substantial payments to Polly Brooks Howe be made during the life of decedent's father, Richard F. Howe, both for the use of Polly Brooks Howe herself and for the "support, maintenance and education" of the children. The payments for the children were to be $25,000 per year for each child. There was no time limit, such as "within minority," specified for such payments. The agreement provided for the amendment of an instrument which had been executed by decedent, William Deering Howe, some years before and which had created a substantial trust. The amendment of the trust instrument was for the purpose, among others, of providing payments to Polly Brooks Howe and the children after the death of Richard F. Howe, at which time the substantial fixed payments mentioned above would cease. The amended trust instrument provided for the division of the corpus of the trust upon the death of Richard F. Howe, in equal shares for each of the daughters of William Deering Howe who survived said Richard F. Howe. The instrument then, in part, provided:

"(1) During the life of each of the said daughters of the Settlor who shall survive the said Richard F. Howe, to apply six-elevenths of the income of the share set aside for her to the use of Polly Brooks Howe, and to apply the other five-elevenths of the income thereof,— or the whole thereof in case of the death of the said Polly Brooks Howe, —to the use of the daughter of the Settlor for whom the said share was set aside, *provided*, that the said Polly Brooks Howe shall be entitled to receive not less than $25,000 in each Fiscal Year * * * out of the income of such share,—or if one of the said daughters of the Settlor shall not have survived the said Richard F. Howe and shall have left no lineal descendant him surviving, then $50,000 in each Fiscal Year out of the income thereof,—and in the event that the six-elevenths of the income hereinbefore directed to be applied to her use shall be less than such amount, then the income so applicable shall be increased to such amount and the income applicable to the use of the daughter for whom such share was set apart shall be decreased accordingly."

The daughters' shares were specifically designated to be used for "the education, care and maintenance" of each daughter until she "shall have come of age".

Various provisions for the trust corpus, not relevant here, were made upon the death of both daughters.

Then the agreement recited:

"The First Party [the decedent, William Deering Howe] will provide by his will that one-third of all the property of which he may die possessed, after payment of all proper charges against his estate * * * shall go to their said children in equal shares * * *."

Among other provisions contained in the agreement, each party waived all rights in the estate of the other.

The agreement also provided that "should either party commence proceedings for divorce, she [Polly Brooks Howe] will make no demand or claim in such proceedings for alimony * *." It was also agreed that:

"11. Legal proceedings for a divorce of the Parties hereto in any jurisdiction on any lawful ground existing before the date of this agreement or arising subsequently shall not impair the validity of this agreement or any lawful term thereof. The terms of this agreement

shall at all times remain in force in so far as they do not conflict with any order or decree made by any court of competent jurisdiction in the premises."

There is no contention by either side that the agreement was not to take effect immediately upon signing.

The instrument was signed by both the decedent and Polly Brooks Howe. It was not acknowledged, as required for some purposes by New York Decedent Estate Law, § 18(9), McKinney's Consol.Laws, c. 13.

7. The Nevada divorce court, after finding that the August 14, 1941 agreement was "fair, just, and equitable" and entitled to be "approved, ratified, confirmed and adopted," included in its divorce decree the following paragraph:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the agreement between the parties dated the 14th day of August, 1941, settling all property rights and all matters concerning the care, custody and control of the two minor children, to-wit: CYNTHIA BROOKS HOWE and PRISCILLA COTTON HOWE, a copy of which agreement was introduced in evidence in this cause and marked Exhibit 'A', be, and the same is hereby, approved, ratified, confirmed and adopted and by reference is hereby made a part of this judgment and decree."

8. Decedent, William Deering Howe, died on November 7, 1948, a resident of Brookville, Nassau County, New York. By will dated January 31, 1944 and codicil dated December 31, 1947, decedent devised securities of a value equivalent to one-third of his net estate in equal portions to his two daughters. This will and codicil were duly admitted to probate in Surrogate's Court, Nassau County, New York on November 24, 1948.

## DISCUSSION

It is the contention of the plaintiff that the estate of William Deering Howe is entitled, in computing the estate tax due, to deduct from the gross estate the value of the securities devised to the two daughters. This deduction is claimed under Section 812(b) of the Internal Revenue Code of 1939.[1]

Plaintiff argues that the devise to the daughters is in fact a claim against the estate based upon the divorce decree, as distinguished from the separation agreement, and that thus the estate is entitled to a deduction whether or not consideration was furnished for such devise. The government, on the other hand, contends that the claim is founded upon the separation agreement and that no "adequate and full consideration in money or money's worth" can be found for it. Hence, the government concludes that the estate is entitled to no deduction.[2]

Before we reach these issues of construction of the federal revenue statutes and their application to the case at hand, however, we are confronted by the government's first contention, that the taxpayer is collaterally estopped from liti-

1. Now Sections 2053, 2043(b), Internal Revenue Code of 1954. Section 812 in relevant part provided:

"For the purpose of the tax the value of the net estate shall be determined * * * by deducting from the value of the gross estate

" * * * *

"(b) Such amounts

"(3) for claims against the estate * * * as are allowed by the laws of the jurisdiction * * * under which the estate is being administered * * *. The deduction herein allowed in the case of claims against the estate * * * shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth * * *.

"For the purposes of this subchapter, a relinquishment or promised relinquishment of dower, curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration 'in money or money's worth.'"

2. We note in passing that involved in this controversy is estate tax in the sum of $1,348,207.46 plus approximately fifteen years' interest.

gating any of the issues in this case. The government points out that New York State has estate tax provisions very similar to the federal provisions contained in Section 812(b). Internal Revenue Code of 1939, set out above.[3] The government further points out that the plaintiff in the current proceedings advanced the same theory espoused here in an effort to obtain a deduction on the state estate tax assessed against this estate, that such claim under the statute was fully litigated in the courts of New York and was determined against the plaintiff.[4] The government argues that since the "same issue" was determined in the litigation under the similar state statute, the plaintiff is foreclosed by the doctrine of collateral estoppel from relitigating it here.

■ While it might be appropriate in a case like this to apply collateral estoppel to the facts found in the state court action,[5] I need not decide that issue here, since the facts as stipulated are the same in all material portions as those found by the New York courts. More difficulty arises as to the legal issues determined by the New York courts. The present action requires a determination as to whether for federal estate tax purposes the claim of the daughters is "founded upon a promise or agreement," and, if so founded, whether "an adequate and full consideration in money or money's worth" was given therefor. This court has concluded that it is neither appropriate nor desirable to give collateral estoppel effect to a state court determination that for state estate tax purposes the claim is so founded and such consideration is absent. This court has so concluded even though the state court attempted to apply federal decisions.[6]

■ It is obviously desirable that the Internal Revenue laws of the United States, being national in scope, be uniformly construed and applied. The giving of collateral estoppel effect to state court constructions of similar state statutes seriously endangers the federal policy seeking such uniformity.[7] State court constructions, possibly erroneous, would thereby be perpetuated in some federal decisions. Such a practice could result in opposite federal outcomes being rendered upon identical facts, where the taxpayer in one case is bound by a previous judgment from a state court which adheres to a construction or application different, though perhaps inadvertently

3. New York Tax Law, § 249–s, McKinney's Consol.Laws, c. 60 provides:
 "For the purpose of the tax the value of the net estate shall be determined by deducting from the value of the gross estate:
 "1. Such amounts * * * (c) for claims against the estate, * * * as are allowed by the laws of this state * * *. * * * The deduction herein allowed in the case of claims against the estate * * * shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth * * *."
 New York Tax Law, § 249–r provides:
 "13. From the purposes of this article, a relinquishment or promised relinquishment of dower, curtesy or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration 'in money or money's worth.' "

4. In re Howe's Estate, 207 Misc. 972, 132 N.Y.S.2d 855 (Surr.Ct.1954), aff'd mem. 286 App.Div. 892, 142 N.Y.S.2d 713 (1955), aff'd without opinion 309 N.Y. 1013, 133 N.E.2d 460 (1956).

5. Cf. Becher v. Contoure Laboratories, 279 U.S. 388, 49 S.Ct. 356, 73 L.Ed. 752 (1929). And we note in passing that lack of "mutuality" would be no obstacle after Bernhard v. Bank of America, 19 Cal.2d 807, 122 P.2d 892 (1942) (Traynor, J.) and Zdanok v. Glidden Company, 327 F.2d 944 (2nd Cir. 1964), cert. denied 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964).

6. 207 Misc. 972, 981, 132 N.Y.S.2d 855, 864.

7. This is true even if collateral estoppel were applied only "defensively." See Currie, Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine, 9 Stan. L.Rev. 281 (1957).

so, from that followed in the federal courts. The United States revenue laws should be subject to no such unequal and fortuitous application. As Judge Learned Hand once said in an analogous connection:

> "Obviously, an administration of the Acts, at once effective and uniform, would best be accomplished by an untrammeled jurisdiction of the federal courts." [8]

Moreover, no matter how similar the federal and state revenue statutes are, the issue decided in the state action is a different issue from that to be decided in the federal action. One inquiry is for federal tax purposes under the federal statute, the other is for state tax purposes under a state statute. The issues being different, collateral estoppel would, of course, not apply.[9] This court concludes, then, that, at least insofar as the *construction* of the federal revenue statutes themselves is concerned, and their *application* to the facts in each case, no collateral estoppel effect should here be given to a state court construction of a similar state statute, even though based upon the same facts.

Nevertheless, one of the *subsidiary* determinations made by the New York courts does seem to be a candidate for collateral estoppel treatment. This is the New York courts' determination as to the power of the Nevada divorce court to order the testamentary disposition present here. The question was fully litigated in three New York courts, and was necessary to their determination of the case. At the time is was in the New York courts, it was fully foreseeable that the issue might be raised in later federal litigation.[10] Judicial efficiency militates strongly in favor of applying collateral estoppel on this fully litigated and limited issue.

However, the extent of the power of the Nevada court seems to be a "mediate datum" in this suit within the meaning of Judge Learned Hand in The Evergreens v. Nunan, 141 F.2d 927, 152 A.L.R. 1187 (2nd Cir. 1944). Judge Hand there distinguished between "ultimate facts" in the second suit, to which the application of collateral estoppel is proper, and "mediate data" in the second suit, to which the application of collateral estoppel is improper. An ultimate fact in the second suit was "one of those facts, upon whose combined occurrence the law raises the duty, or the right in question * * *." (141 F.2d at 928) A mediate datum was a fact of secondary importance in the second suit, called also an "evidentiary fact" by the Restatement,[11] and defined by Judge Hand as "a fact, *from* whose existence may be rationally inferred the existence [of an ultimate fact] * * *." (141 F.2d at 928; emphasis supplied.) The extent of the power of the Nevada court seems under Judge Hand's interpretation to be a mediate datum here since from it one may infer whether the devise of the decedent was based upon the separation agreement. Thus, the extent of such power is a question to which it is improper to apply collateral estoppel. While Judge Hand's formulation has been limited in applicability and his intent to set it down as a rigid rule questioned in this circuit, United States v. Kramer, 289 F.2d 909, 916 (2nd Cir. 1961)

8. Lyons v. Westinghouse Electric Corp., 222 F.2d 184, 189 (2nd Cir. 1955), cert. denied 350 U.S. 825, 76 S.Ct. 52, 100 L. Ed. 737 (1955).

9. See Cromwell v. County of Sac, 94 U.S. 351, 352–353, 24 L.Ed. 195 (1876); 1B Moore, Federal Practice (2nd ed. 1965), ¶¶ 0.441 [1], 0.441 [2].

10. The claim for refund in this case was filed with the United States Collector of Internal Revenue for this revenue district on February 5, 1953. Trial was begun on the state claim in the Surrogate's Court, Nassau County, New York, on May 7, 1954.

11. Restatement, Judgments, § 63, Comment p. (1948 Supplement).

(Friendly, J.),[12] it has not been overruled, and this court feels constrained to follow it. Without any reliance upon collateral estoppel, therefore, it is necessary to examine once again the extent of the power of the Nevada court.

The court has carefully studied the relevant Nevada statutes in effect at the time of the divorce, Nev.Comp.Laws, 1929, § 9462, Nev.Comp.Laws, 1929, §§ 9463, 9465 (Supp.1931–1941), set out in part in the margin.[13] While not fully explicit on the point at issue, the statutes, especially Section 9465, supra, suggest that the power of the Nevada court is limited to providing for the needs of minor children. This is also the implication of various language referring to "minor" children appearing in Lewis v. Lewis, 53 Nev. 398, 2 P.2d 131, 134, 135, 136 (1931) and Schneider v. Second Judicial District Court, 64 Nev. 26, 176 P.2d 797, 800, 801–802 (1947).[14]

██ The Second Circuit said in Rosenthal v. Commissioner, 205 F.2d 505, 508 (1953):

"* * * While neither the Nevada statute, Nev.Comp.Laws §§ 9462, 9463 (Supp.1931–1941) [footnote omitted], nor interpretive decisions indicate the precise limits of the divorce court's authority in this area, courts of other jurisdictions operating under similar statutes have been restricted in their power to make awards of property to children to amounts appropriate merely for the maintenance of minor children. Fitch v. Cornell, C.C.D. Or., 9 Fed.Cas. page 172, No. 4,834; Thiessen v. Moore, 105 Ohio St. 401, 137 N.E. 906. * * *"

This conclusion is strengthened as well by Lewis v. Lewis, 71 Nev. 301, 289 P.2d 414 (1955), cited by neither side. I, therefore, conclude that the independent power of the Nevada divorce court extended only to provision for the needs of minor children, which were admittedly provided for elsewhere in the agreement it adopted, and did not extend to directing the testamentary disposition of decedent's estate.

 Plaintiff argues, however, that the claim herein must be founded upon the decree, since the separation agree-

---

12. See also Hyman v. Regenstein, 258 F. 2d 502, 511 (5th Cir. 1958), cert. denied 359 U.S. 913, 79 S.Ct. 589, 3 L.Ed.2d 575 (1959); Comment, Developments— Res Judicata, 65 Harv.L.Rev. 818, 842–843 (1952); Note, Collateral Estoppel by Judgment, 52 Colum.L.Rev. 647, 662–663 (1952); 1B Moore, Federal Practice (2nd ed. 1965), ¶ 0.442 [2]. But see Yates v. United States, 354 U.S. 298, 338, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957); Restatement, Judgments, § 68, Comment p. (1948 Supplement).

13. § 9462. "The court, in granting a divorce, shall make such disposition of, and provision for, the children, as shall appear most expedient under all the circumstances, and most for the present comfort and future well-being of such children; * * * provided, the court, upon good cause shown, may change the custody of such minor children, if they should be satisfied that such change will be for the welfare of such children."

§ 9463. "In granting a divorce, the court may award such alimony to the wife and shall make such disposition of the community and separate property of the parties as shall appear just and equitable, having regard to the respective merits of the parties, and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens, if any, imposed upon it for the benefit of the children. * * * In the event of the death of either party, or the subsequent remarriage of the wife all alimony awarded by the decree shall cease, unless it shall have been otherwise ordered by the court. * * *"

§ 9465. "In any suit wherein the court has granted a decree of divorce and awarded alimony to the wife, in the event of the subsequent remarriage of the wife, and there being issue of the former marriage, the court in which the divorce was granted may, on proper showing of the case, enter an order that the alimony previously awarded, or part thereof, be paid as ordered by the court, for the benefit of the *minor* children. * * *" (Emphasis supplied.)

14. Cf. as well Section 9462, Nev.Comp. Laws, 1929 (Supp.1943–1949) enacted shortly after this decision.

ment was unenforcible. The agreement was unenforcible, it is claimed, since the release of the right of election against the will of decedent was ineffectively executed, leaving no consideration to support decedent's promise to leave one-third of his estate to his daughters. I find no merit in this contention. It is clear that under New York law, which admittedly governs on this point, a separation agreement which contains a purported release of the right of election which is ineffective because not acknowledged as required in New York Decedent's Estate Law, § 18(9), is still enforcible as to the other provisions contained therein. Matter of Laney's Estate, 274 App.Div. 250, 80 N.Y.S.2d 421 (1948), aff'd without opinion 298 N.Y. 834, 84 N.E.2d 145 (1949). An examination of the agreement between the parties uncovers a number of provisions, such as the surrender of dower rights, the surrender of rights to intestate succession, and the surrender of rights of administration by Mrs. Howe, that would support decedent's promise. Plaintiff, therefore, must fail in this argument.

With this background I come finally to the most basic question in this case: Upon what is the daughters' claim "founded," and if upon an agreement, was there "an adequate and full consideration in money or money's worth" therefor?

■ I begin this discussion by noting that in this area many of the estate and gift tax provisions of the Internal Revenue Code are complementary and should be read together, as should the decisions thereunder. Merrill v. Fahs, 324 U.S. 308, 65 S.Ct. 655, 89 L.Ed. 963 (1945); Harris v. Commissioner, 340 U.S. 106, 71 S.Ct. 181, 95 L.Ed. 111 (1950). The purpose of this rule, of course, is to prevent the achievement during life of tax results which would not be permitted at death.

As already determined, the Nevada court had no independent power to order the testamentary disposition of decedent's estate. In these circumstances the case seems controlled by Rosenthal v. Commissioner, 205 F.2d 505 (2nd Cir. 1953). In that case, after discussing the power of the Nevada divorce court regarding awards to children, the court went on to say:

"* * * Awards to children beyond their needs for support during minority have been held enforceable where based upon a contractual agreement between the parties to the divorce. Dunham v. Dunham, 189 Iowa 802, 178 N.W. 551; Worthington v. Worthington, 207 Ark. 185, 179 S.W.2d 648; see also Hayn v. Hayn, 162 Kan. 189, 175 P.2d 127; Sedam v. Sedam, Ohio App., 78 N.E.2d 914; but see Price v. Price, Tex.Civ.App., 197 S.W.2d 200. That is the situation here. But since such a decree provision depends for its validity wholly upon the consent of the party to be charged with the obligation and thus cannot be the product of litigation in the divorce court, we do not consider the rationale of the Harris decision applicable to the present case. We therefore conclude that the arrangements here made for the taxpayer's daughters beyond their support during minority do not obtain exemption from the federal gift tax by simply receiving the court's imprimatur. * * *" (205 F.2d at 508)

While Rosenthal is a gift tax case, its rationale applies to the present case.

■ The rule therein has been enunciated elsewhere. Hooker v. Commissioner, 174 F.2d 863 (5th Cir. 1949); Karl T. Wiedemann v. Commissioner, 26 T.C. 565 (1956). I would apply it here. Cases such as Harris v. Commissioner, 340 U.S. 106, 71 S.Ct. 181, 95 L.Ed. 111 (1950), Commissioner v. Maresi, 156 F.2d 929 (2nd Cir. 1946), Commissioner v. Converse, 163 F.2d 131, 174 A.L.R. 199 (2nd Cir. 1947), McMurtry v. Commissioner, 203 F.2d 659 (1st Cir. 1953), and Commissioner v. Watson's Estate, 216 F.2d 941 (2nd Cir. 1954) are not applicable. In all of them the divorce court had independent power to order the provisions it did. It did not have such power here.

I conclude, therefore, that the claim of the daughters is one founded upon an agreement within the meaning of Section 812(b), Internal Revenue Code, 1939.[15]

I reach the final point—whether there was given in exchange for this claim "a full and adequate consideration in money or money's worth." Plaintiff first argues that such consideration was present as a matter of law, citing Reg. § 86.8, Internal Revenue Code of 1939 (now Reg. § 25.2512–8, Internal Revenue Code of 1954). That section, applicable to the gift tax, provides in part:

> " * * * However, a sale, exchange, or other transfer of property made in the ordinary course of business (a transaction which is bona fide, at arm's length, and free from any donative intent), will be considered as made for an adequate and full consideration in money or money's worth. * * * "

Plaintiff urges that the transaction here, entered into after prolonged negotiations in which both parties were represented by counsel, was at arm's length.

■ It may be helpful first to observe that the above reference to transactions in the ordinary course of business is not repeated in the Regulations applicable to the estate tax, Reg. §§ 81.29, 81.36, Internal Revenue Code of 1939 (now Reg. §§ 20.2053–4, 20.2043–1, Internal Revenue Code of 1954). While it is true that the gift and estate tax statutes are read in pari materia for many purposes, the Regulations thereunder should be so read only when to do so does not do violence to the composite statutory scheme. I believe that the Regulation cited by plaintiff above was not intended to be, and is not, applicable to the estate tax provision herein, Section 812(b), Internal Revenue Code of 1939 (now §§ 2053, 2043(b), Internal Revenue Code of 1954).

■ A decision of the Ninth Circuit in a very similar case, United States v. Past, 347 F.2d 7 (9th Cir. 1965), supports this conclusion. There, a unanimous court held Regulation § 25.2512–8 inapplicable to a provision of the estate tax, Section 2036, Internal Revenue Code of 1954.[16] The court first observed that extensive negotiations had taken place prior to the agreement therein. The court then recited the "arm's length" or "ordinary course" argument put forward by the taxpayer here and then rejected it, saying:

> " * * * We do not agree. The fact alone that the transfer into the trust was part of a property settlement agreement incident to a divorce is not sufficient to make the transfer of the decedent one for an ade-

---

15. Nor do I read Aldrich v. Aldrich, 378 U.S. 540, 84 S.Ct. 1687, 12 L.Ed.2d 1020 (1964) as requiring any different result. No collateral attack on the Nevada decree is here made. I inquire only as to the "foundation" for federal tax purposes of the daughters' claim. Section 812(b), Internal Revenue Code of 1939; §§ 2053, 2043(b), Internal Revenue Code of 1954. Moreover, I do not read Borax' Estate v. Commissioner, 349 F.2d 666 (2nd Cir. 1965) or Wondsel v. Commissioner, 350 F.2d 339 (2nd Cir. 1965), both cases decided under the income tax provisions of the Internal Revenue Code with respect to alimony, as requiring any different result. One of the basic rationales of the Borax decision was the equitable goal of placing the tax burden upon those benefiting monetarily from marriage settlements. 349 F.2d at 670–671. But here, if this inquiry as to foundation is not made, the decedent might be able to accomplish a tax-free result which he could not have achieved during life due to the gift tax. Moreover, if some of the possible implications of these two cases were fully pursued, the effect might be entirely to insulate from any federal tax transfers made by parties to a divorce decree to the natural objects of their bounty, far beyond their children's needs during minority, merely by seeing to it that such transfers received the divorce court's "imprimatur." I do not believe the intended scope of the decisions extends so far. Their rationale does not apply to this case. Indeed, I am here forced to pursue this inquiry since the Internal Revenue Code specifically requires a determination of upon what the claim is "founded."

16. Judge Ely dissented from the court's calculations of the tax due, however.

quate and full consideration within the meaning of section 2036. [footnote omitted]" 347 F.2d 7, 12.

Indeed, to hold otherwise here would be to insulate from estate taxation nearly all property arrangements made pursuant to a separation agreement. I do not believe that Congress ever intended such a broad exclusion. Indeed, the language of Section 812(b) would seem to imply the contrary. Regulation § 86.8, not being applicable to Section 812(b), an adequate and full consideration in money or money's worth is not present here, at least not as a matter of law.[17]

▪ I proceed, then, to examine the particular facts of the case, including the separation agreement, in order to ascertain whether an adequate and full consideration in money or money's worth was actually present. The primary consideration for the claim herein must have been Mrs. Howe's surrender of her rights in decedent's estate. But this is precisely the sort of consideration which the statute provides shall not be considered to any extent a consideration "in money or money's worth." This factor, then, is ineffective to create deductibility. I reject as well plaintiff's argument that the decedent's "freedom" constituted consideration in money or money's worth within the meaning of the statutes involved herein.

▪ However, Paragraph 6 of the separation agreement provides as follows:

"The Second Party [Mrs. Howe] will pay all the expenses of the care, custody and maintenance of their said children during their minority which are not met from the income to them from the First Party [Mr. Howe] or from said trust as amended or from other personal income of their children available for such care, custody and maintenance."

While possibly not furnishing an adequate and full consideration, in light of the magnitude of the bequest to the daughters and the size of the payments to be made during the life of Richard F. Howe, the promise of the then Mrs. Howe contained in Paragraph 6 may have furnished some consideration in money or money's worth for decedent's promise. The estate is entitled to a deduction from the gross estate only to the extent that consideration in money or money's worth was furnished by Paragraph 6 of the agreement. Rosenthal v. Commissioner, 205 F.2d 505 (2nd Cir. 1953); Helvering v. United States Trust Co., 111 F.2d 576 (2nd Cir.) (L. Hand, J.), cert. denied United States Trust Co. of New York v. C. I. R., 311 U.S. 678, 61 S.Ct. 45, 85 L.Ed. 437 (1940). The extent of the consideration in money or money's worth, if any, furnished by Paragraph 6 must be determined. A genuine issue of material fact exists as to that issue only.

Plaintiff's motion for summary judgment is denied.

Defendant's motion for summary judgment is denied.

Trial will be limited to the single issue of the amount of consideration in money or money's worth, if any, which was furnished for the promise of decedent William Deering Howe to leave one-third of his net estate to his daughters by the promise of Mrs. Howe in Paragraph 6 of the separation agreement.

Proof at trial should include data bearing on the reasonable needs of the daughters during the continuance of their minority, the life expectancy of Richard F. Howe on August 14, 1941, the income of the trust in the years and months preceding August, 1941, and the expectations on August 14, 1941 of the future income from the trust.

No other genuine issues of material fact exist.

Settle order on notice.

17. In light of the above, the case cited by the plaintiff, Shelton v. Lockhart, 154 F. Supp. 244 (W.D.Mo.1957), pertaining to the gift tax, is inapposite.