*Decisions will be entered under Rule 50.*

ESTATE OF HAROLD HARTSHORNE, DECEASED, HAROLD HARTSHORNE, JR., AND JAMES M. HARTSHORNE, EXECUTORS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2190–65.   Filed September 21, 1967.

*Francis J. Rogers*, for the petitioners.

*James Q. Smith* and *Richard E. Ingram*, for the respondent.

ARUNDELL, *Judge:* Respondent determined a deficiency in estate tax in the amount of $184,563.60 in respect of the Estate of Harold Hartshorne. Petitioners assign three errors as follows:

A. In valuing decedents one-half interest in real property located in Bar Harbor, Maine, at $10,000.00, whereas the true value of said interest was $7,021.49.

B. In disallowing as a deduction to the extent of $231,496.38 the obligation or debt of the estate created by Separation Agreement dated January 1, 1942 between decedent and Mary Bryan Hartshorne.

C. In disallowing as a deduction the further amount of $13,239.41 as an obligation or debt of the estate existing under said Separation Agreement dated January 1, 1942.

In his brief respondent has combined assignments B and C into a single question and then states the questions presented as follows:

1. Whether the value of a one-half interest in real estate reported by petitioners and accepted by respondent at $10,000 should be decreased to $7,021.49.

2. Whether a total of $327,966.96 [1] should be allowed as a deduction as a debt of decedent owing to decedent's divorced wife and children rather than the $83,231.17 allowed as a deduction by the respondent.

Respondent admits, as alleged by petitioners in their petition, that:

7. Decedent's estate is entitled to a further deduction with respect to additional attorneys fees and expenses that will necessarily be incurred in connection with said deficiency and in the proceedings relating thereto and petitioners request that this court fix the amount thereof.

8. The estate is entitled to allowance of a credit for New York estate taxes paid in this estate as and when proof of such payment is duly submitted.

Effect will be given to this admission in the recomputation that will be made under Rule 50.

### FINDINGS OF FACT

All of the facts have either been stipulated or admitted in the pleadings. The stipulation, together with all of the exhibits attached thereto, is incorporated herein by reference.

Decedent Harold Hartshorne died a resident of New York County, N.Y., on February 15, 1961, leaving a last will and testament and codicil thereto which were duly admitted to probate in the Surrogate's Court of New York County, N.Y., on March 16, 1961, and Harold Hartshorne, Jr., and James M. Hartshorne were appointed executors of his estate by that court on said date.

A Federal estate tax return with respect to decedent's estate was duly and timely filed in the office of the district director of internal revenue, Manhattan District.

Decedent married Mary Bryan Hartshorne, hereinafter sometimes referred to as Mary, in New York City, N.Y., on January 4, 1923, and three children were born of said marriage, their names and dates of birth being: James M. Hartshorne, born October 11, 1923; Anne M. Hartshorne, born January 8, 1927; Margaret B. Hartshorne, born December 30, 1928.

---

[1] On p. 32 of his brief respondent says the amount of $327,966.96 is derived as follows:

| | |
|---|---|
| Allowed as deduction by respondent | $83,231.17 |
| Claimed as an additional deduction under ¶ EIGHTH, Ex. 8–H | 13,239.41 |
| Claimed as a deduction under ¶ THIRD, Ex. 1–A (See statutory notice) | 231,496.38 |
| Total | 327,966.96 |

In the estate tax return, petitioners actually claimed a deduction under par. Eighth of the Jan. 1, 1942, agreement of $6,000 instead of $13,239.41 and a deduction under par. Third of decedent's will of $314,700, or a total of $320,700. In his deficiency notice, the respondent disallowed as "debts of decedent" the amount of $237,496.38, thereby, in effect, allowing $83,203.62 which he now apparently concedes should be $83,231.17, an increased allowance of $27.55. More of the details will appear in our findings.

Mary was born December 27, 1894. Decedent was born September 8, 1891.

The real property, reported in Schedule A, item 1 of the Federal estate tax return, located at Bar Harbor, Maine, and in which decedent had a one-half interest, was a family summer home which had been inherited by decedent and his sister from their mother and father in equal one-half shares, as tenants in common.

The Bar Harbor house was sold on January 31, 1964, to Kent J. Valan and wife of Stamford, Conn., who were not known or related to petitioners or their family.

The real property located at Bar Harbor, Maine, was valued for estate tax purposes on the estate tax return at $20,000 pursuant to an appraisal of Fred C. Lynam & Co., dated February 26, 1962. Decedent's share of this amount was valued at $10,000. This valuation was accepted by the respondent. The estate of decedent was valued as of the date of death. An election was not made to value the estate as of an alternate valuation date or dates.

The real property aforesaid was sold for a net sales price of $14,002.98 on January 31, 1964, of which one-half, or $7,001.49, was paid to decedent's estate and one-half to decedent's sister.

The Bar Harbor property is includable in decedent's gross estate at a value of $10,000.

Mary instituted suit against decedent in the Supreme Court of the State of New York, in and for the County of New York, for separation from decedent, for custody of issue of the marriage, for alimony, and other relief, which resulted in a judgment of the New York Supreme Court, dated February 4, 1938, decreeing separation, allowing Mary custody of the three children of the marriage, and granting her alimony of $800 per month payable "during her life."

In 1940, in the same court and in the same proceeding, Mary moved for an order modifying the 1938 judgment praying that her alimony be increased to $3,500 per month and for attorneys' fees. The issues thereby raised were heard before an official referee of the Supreme Court and, following the filing of the referee's report, an order was made on April 23, 1941, by said court increasing Mary's alimony payments to $1,500 per month and allowing her certain counsel fees.

An appeal having been taken by decedent to the appellate division of the New York Supreme Court, County of New York, a settlement order of that court, made October 7, 1941, fixed Mary's alimony at $1,000 per month and reduced the counsel fees awarded to her. Mary appealed from said order of the appellate division to the New York Court of Appeals, which court affirmed the order of the appellate division and an order on remittitur from the Court of Appeals, making its order the order of the Supreme Court, was entered in the latter court on January 19, 1942.

While the New York action was pending, decedent sued Mary for divorce in Nevada, resulting in a judgment or decree of the First District Court of the State of Nevada, dated September 5, 1941, granting decedent a divorce from Mary. The recitals of said judgment or decree show that Mary did not appear in said action and was served with process of the Nevada court in North Carolina where she then resided. The judgment or decree made no provision for any settlement of property rights or support rights.

Under date of December 31, 1941, decedent, as grantor, created a trust by trust agreement with Charles S. McVeigh as trustee for the benefit of Mary and of the three children of their marriage, and set up said trust by the transfer to the trustee of securities then worth approximately $100,000.

On or about January 1, 1942, Mary and decedent entered into an agreement, hereinafter sometimes referred to as the settlement or 1942 agreement (j. Ex. 8–H of stipulation) which they signed and sealed as of the date of January 1, 1942. This settlement agreement, after reciting in its "Whereas" clauses the date of their marriage, the dates of birth, and the names of their three children, the litigation between them in the New York courts, the resulting judgment of separation obtained by Mary in the New York Supreme Court, the fact that the said judgment would be subject to modification from time to time on application of either of the parties, and the desire of the parties "to fix and determine their relationship for the rest of their lives and to avoid court proceedings for the modification from time to time of said judgment of separation" provided in part as follows:

Now Therefore, This Agreement Witnesseth, that for and in consideration of the mutual covenants herein contained, It Is Agreed by and between the parties hereto as follows:

FIRST: This agreement shall supersede the judgment of separation dated February 4th, 1938, as modified, and the parties hereto do stipulate that the said judgment may be cancelled and annulled and that the respective rights and liabilities of the parties hereto shall be as provided for herein and not otherwise, and that this agreement may not be altered or modified orally but shall only be modified or altered in writing signed by the parties hereto, with the same formality as this agreement is executed.

SECOND: The party of the first part shall pay to the party of the second part so long as she shall live or until she shall remarry for her support and maintenance and for the support, maintenance and education of the issue of their marriage, a sum equal to one-half the actual net income of the party of the first part after the deduction of all taxes assessed, levied and imposed by the Federal and any and all state governments thereon, which are payable by the party of the first part, until their son James Mott Hartshorne shall arrive at twenty-one years of age, thereafter forty-five (45%) per cent until their daughter Anne Mac-Whorter Hartshorne shall arrive at the age of twenty one years, and then forty (40%) per cent until their daughter Margaret Bryan Hartshorne shall arrive at the age of twenty-one years, and thereafter thirty-three and one-third (33⅓%)

per cent so long as the party of the second part shall live or until she shall remarry. * * * In addition to the foregoing the party of the first part shall pay or cause to be paid the expenses for the education of James Mott Hartshorne, the son of the parties hereto.

THIRD: In determining the actual net income of the party of the first part there shall be excluded any rental or income from the real estate now owned by the party of the first part in the States of Maine and New Jersey, or from the proceeds thereof in the event of their sale, whether the same be reinvested in real or personal property. * * * In determining the said actual net income, the income shall be increased by any gain resulting from the sale of the securities, and shall be reduced by any losses on the sale of securities set forth in the schedule of assets owned by the party of the first part as of December 31st, 1941, annexed hereto, represented by the difference between the net proceeds of sale and the value of the security as shown in such schedule. * * *

\* \* \* \* \* \* \*

SIXTH: The party of the first part shall pay to the party of the second part the sum of twenty-five thousand ($25,000.) dollars in cash, in consideration of which the party of the second part does hereby waive and release all dower, right of dower and interest in the real estate owned by the party of the first part in the States of Maine and New Jersey, and the party of the second part does hereby agree to make, execute and deliver to the party of the first part upon demand good and sufficient release or releases of such rights to the party of the first part, his heirs or assigns, and will upon request of the party of the first part join with him in the execution of any and all deeds to any such real property. * * *

SEVENTH: The party of the first part will make provision in his last will and testament for a trust fund in a sum equal to one-third (⅓) of his estate at the time of his death, excluding the real estate owned by the party of the first part in Maine and New Jersey or the proceeds thereof in the event of sale or the reinvestment of any such proceeds, less the sum of one hundred thousand ($100,000.) dollars, the income from which shall be payable to the party of the second part for her natural life and the principal thereof upon her death in equal shares to the issue of the parties hereto. Excepting as herein provided, the party of the second part does hereby waive and release all rights which she may now have or may hereafter have in the estate of the party of the first part, and expressly waives the right of election granted to her by virtue of Section 18 of the Decedent Estate Law of the State of New York to take against any last will and testament of the party of the first part containing the said trust provision.

EIGHTH: If the party of the first part shall make any gift depleting his assets, excepting a gift of the real estate now owned by the party of the first part in the States of Maine and New Jersey, or the proceeds of the sale thereof or reinvestment of any such proceeds, to any person other than to the party of the second part and the issue of the parties hereto, then the party of the first part shall increase the principal amount of the trust fund theretofore set up for the benefit of the party of the second part and the issue of the parties hereto in like amount, but, should the party of the first part increase the principal amount of the said trust, he shall be at liberty to make an equivalent gift in money's worth to any other parties.

\* \* \* \* \* \* \*

FOURTEENTH: This agreement shall not be a bar to any action for divorce brought by either party hereto against the other in the court of any State and in the event of a divorce between the parties hereto the terms and conditions hereof shall survive and continue in full force and effect.

After the settlement agreement had been made, Mary appeared generally by attorney in the divorce action brought by decedent in the Nevada court and the said settlement agreement dated January 1, 1942, was submitted to that court for approval and marked as an exhibit in the divorce action there pending. Thereupon, the Nevada court made a "modified" decree, dated May 4, 1942, which contained among other things the following:

It Is Further Ordered, Adjudged and Decreed that the property rights of the plaintiff and the defendant, and all matters pertaining to the support and maintenance of the defendant, and all matters concerning the care, custody, control, support, maintenance and education of the minor children of the parties, to-wit JAMES MOTT HARTSHORNE, ANN MacWHORTER HARTSHORNE and MARGARET BRYAN HARTSHORNE, be, and the same are hereby settled and decreed in accordance with the terms and provisions of that certain agreement in writing, duly made, executed and entered into for such purpose by and between Harold Hartshorne and Mary Bryan Hartshorne, of date the 1st day of January, 1942, a full, true and correct copy of which said written agreement has been admitted in evidence in this action, and marked and designated as Plaintiff's Exhibit A, and the terms and provisions of said agreement are hereby ratified, confirmed, approved and fully adopted by this court in all respects, and with the same force and effect as if said agreement were annexed hereto and set out in full in haec verba as a part hereof; and said agreement is hereby declared to be fair, just and equitable to all parties concerned; and that the plaintiff and the defendant be, and they hereby are, directed and ordered to comply with all the terms and conditions of said agreement.

Decedent left a last will and testament, dated January 25, 1952, and a codicil, dated March 21, 1955. Among other things, the will provided:

THIRD: All of the rest, residue and remainder of my estate, both real and personal, of whatsoever nature and wheresoever situated of which I shall die seized or possessed (all of which property is hereinafter referred to as my residuary estate), I give, devise and bequeath as follows:

A. I direct my Executors to set aside a fund out of my residuary estate which shall be equal in value to one-third (⅓) of my estate at the time of my death, excluding my real estate in the States of New Jersey and Maine or the amount of the proceeds thereof or the reinvestment of any such proceeds, less the sum of One Hundred Thousand Dollars ($100,000.) and I give, devise and bequeath such fund to my Trustee hereinafter named, In Trust Nevertheless, to hold, invest and reinvest the same for and during the lifetime of my former wife, MARY BRYAN HARTSHORNE, and to collect and receive the rents, income, issues and profits and after paying thereout all necessary and proper charges and expenses to pay over the net income to her for and during the term of her natural life and upon her death I direct my Trustee to transfer, pay over and deliver and I give, devise and bequeath the principal of this fund to the issue of the said Mary Bryan Hartshorne and me who shall survive her, their heirs, executors, administrators and assigns, in equal shares, absolutely and in fee simple. If the said Mary Bryan Hartshorne shall predecease me then I give, devise and bequeath the principal of this fund to the issue of Mary Bryan Hartshorne and me who shall survive me, their heirs, executors, administrators and assigns, in equal shares, absolutely and in fee simple.

*It is my intention in making the foregoing provisions in this Paragraph A of this Article of this my Will to carry out the provisions of Paragraph Seventh of a certain Agreement, dated January 1st, 1942, between Mary Bryan Hartshorne and me.* [Emphasis supplied.]

Decedent and his then wife, Louise Heyer Hartshorne, died in an airplane crash in Berg, Belgium, on February 15, 1961.

In article Third B of decedent's will decedent directed his executors to divide the balance of his residuary estate into 100 equal parts which he gave, devised, and bequeathed as follows:

13 equal parts in fee to son Harold Hartshorne, Jr.
13 equal parts in trust to son James Mott Hartshorne
13 equal parts in trust to daughter Anne Hartshorne Inniss
13 equal parts in trust to daughter Margaret Hartshorne Carrasco
16 equal parts in trust to son Daniel Hatch Hartshorne
16 equal parts in trust to daughter Gail Hartshorne
16 equal parts in trust to daughter Daryl Hartshorne

Harold Hartshorne, Jr., was the issue of a marriage of decedent entered into prior to his marriage to Mary. Daniel, Daryl, and Gail Hartshorne were issue of a marriage entered into by decedent after his divorce from Mary.

At the time of decedent's death on February 15, 1961, he was survived by Mary and the seven previously mentioned children.

Decedent's codicil, dated March 21, 1955, provided in part as follows:

FIRST: I direct my Executors to set aside a fund out of my residuary estate which shall equal fifty-five per cent (55%) in value of my aforesaid residuary estate at the time of my death and I give, devise and bequeath such fund to my Trustees hereinafter named to hold, invest and reinvest the same for and during the lifetime of my wife, LOUISE HEYER HARTSHORNE, and to collect and receive the rents, income, issues and profits and after paying thereout all necessary and proper charges and expenses to pay over the net income to Louise Heyer Hartshorne for and during the term of her natural life and upon her death I direct my Trustees to transfer, pay over and deliver and I give, devise and bequeath the principal of this fund to my issue who shall survive Louise Heyer Hartshorne, their heirs, executors, administrators and assigns, in equal shares per stirpes, however, and not per capita, absolutely and in fee simple. If the said Louise Heyer Hartshorne shall predecease me then this Article of this Codicil to my said Last Will and Testament shall be null and void and the provisions of my Last Will and Testament dated January 25th, 1952 shall remain in full force and effect without modification.

I realize that the provisions of this Codicil diminish the shares my issue would otherwise take upon my death under the provisions of my Will dated January 25th, 1952 and it is not through any lack of love and affection for them that I am modifying their present benefits in favor of postponing their enjoyment of this share of my estate.

\*        \*        \*        \*        \*        \*        \*

THIRD: In all other respects I hereby ratify, confirm, republish and declare my said Last Will and Testament dated January 25th, 1952.

In or about the years 1956 and 1958 decedent made certain gifts of his assets into custodian accounts under article 8A of the Personal

Property Law of the State of New York for the benefit of the three children who were born of the marriage of decedent and his wife Louise. These gifts were treated as transfers during decedent's life and included in Schedule G of the estate tax return as follows:

Decedent was donor and custodian under Article 8A of the Personal Property Law of N.Y. of the following accounts for his infant children at E. F. Hutton & Co.:

| | |
|---|---|
| Acct. No. 40553—Custodian for Daniel Hartshorne | $4,353.98 |
| Acct. No. 40552—Custodian for Daryl Hartshorne | 3,038.60 |
| Acct. No. 40562—Custodian for Gail Hartshorne | 5,484.33 |
| Total | 12,876.91 |

In the statutory notice of deficiency the respondent, in adjustment (d), increased the value of the custodial account No. 40552 from $3,038.60 to $3,401.10, an increase of $362.50, so that the aggregate values of all custodial accounts became $13,239.41. This adjustment was not contested by petitioners and the full amount of $13,239.41 was included in the gross estate.

The executors of the decedent, in Schedule K "Debts of Decedent" of the estate tax return, claimed as deductible debts from the gross estate two alleged debts aggregating $320,700 with the following explanations:

Obligation created by separation agreement dated January 1, 1942 (Exhibit D) between decedent and Mary Bryan Hartshorne whereby decedent was required to create in his Will a Trust of a specified portion of his estate, for the benefit of said Mary Bryan Hartshorne, and children of their marriage, which obligation was carried out by Article Third of his Will.

Said separation agreement dated January 1, 1942 was approved and incorporated by reference in decree of divorce issued by the District Court of the First Judicial District, Douglas County, Nevada, dated September 5th, 1941 (Exhibit E) as modified May 4, 1942 (Exhibit F) __ $314,700

Obligation under Paragraph Eighth of said separation agreement dated January 1, 1942, to contribute to trust created by decedent for benefit of Mary Bryan Hartshorne by Indenture of Trust dated December 31, 1941 (Exhibit C) an amount equal to assets transferred by decedent to Custodian Accounts for the benefit of his three children, Daniel, Daryl, and Gail, as reported in Schedule 'G–1' hereof.

Total value of assets as transferred, June 21, 1956 _____ 6,000

Total claimed above _____ 320,700

In the statutory notice of deficiency, the respondent in adjustment (f) disallowed as "Debts of decedent" the amount of $237,496.38 and, in a statement attached to the deficiency notice, explained the disallowance as follows:

(f) It is determined that the deduction of $314,700.00 claimed on the return as a debt under a separation agreement dated January 1, 1942 and divorce decree

of the District Court of the First Judicial District. Douglas County, Nevada dated September 5, 1941 as modified May 4, 1942 is not allowable to the extent of $231,496.38 in accordance with Section 2053 of the Internal Revenue Code of 1954.

It is determined that no deduction is allowable under Section 2053 of the Internal Revenue Code of 1954 for an alleged obligation under paragraph "Eighth" of a separation agreement dated January 1, 1942 and divorce decree of the District Court of the First Judicial District, Douglas County, Nevada dated September 5, 1941 as modified May 4, 1942, claimed on the return as a debt in the amount of $6,000.00.

The present value at the date of decedent's death of the life interest of Mary, then aged 66, in the trust created under article Third A of decedent's will, was computed by respondent in the amount of $83,231.17, as follows:

| | | |
|---|---:|---:|
| Gross estate | | $2,213,651.72 |
| Less: | | |
| Schedule J [1] | $183,959.46 | |
| Schedule K [2] | 63,727.91 | |
| | | 247,687.37 |
| Adjusted gross estate | | 1,965,964.35 |
| Deduct: | | |
| Custodian accounts | 13,239.41 | |
| Insurance payable to beneficiaries | 62,058.35 | |
| Canadian tax | 2,684.34 | |
| Maine tax | 249.97 | |
| New York tax | 125,767.64 | |
| Federal estate tax | 579,588.80 | |
| | | 783,588.51 |
| Distributable estate | | 1,182,375.84 |
| Less: | | |
| Proceeds of N.J. property | 96,592.86 | |
| Maine property | 10,000.00 | |
| | | 106,592.86 |
| Distributable estate less exclusions | | 1,075,782.98 |
| One-third to trust created by will | | 358,594.33 |
| Less sum previously placed in trust | | 100,000.00 |
| Net value of trust | | [3] 258,594.33 |
| Life factor—66 years of age | | .32186 |
| Value of life estate | | 83,231.17 |

[1] Deductions for executors' commissions, attorney fees, funeral, and administration expenses.

[2] Debts of decedent, exclusive of the two previously mentioned debts claimed by petitioners totaling $320,700.

[3] Petitioners contend that the custodian accounts totaling $13,239.41 should be added to the $258,594.33 before applying the life factor of 0.32186.

OPINION

On the first issue we have found as a fact and we hold that the Bar Harbor property is includable in decedent's gross estate at a value of $10,000. This is the value which the executors returned and which was accepted by the respondent. The lower price received in a sale of the property nearly 3 years later without some explanation may not be accepted as the value at the date of death.

On the second issue (assignments B and C) the executors of the decedent, in Schedule K of the estate tax return, originally claimed, under section 2053 of the Internal Revenue Code of 1954,[2] a deduction under paragraph Third of decedent's will of $314,700 and a deduction of $6,000 under paragraph Eighth of the January 1, 1942, settlement agreement by reason of the three custodian accounts set up for the benefit of the three children born of the marriage of decedent and his wife Louise, or total deductions under section 2053 of $320,700. The respondent in his deficiency notice disallowed $231,496.38 of the $314,700 and all of the $6,000, thereby, in effect, allowing $83,203.62 which he now apparently concedes should be $83,231.17, an increased allowance of $27.55.

Paragraph 13 of the stipulation is in the margin.[3] We have set out in our findings the respondent's computation of the value at the date of decedent's death of Mary's life estate in the trust created under article Third A of decedent's will. This computation shows the

----

[2] SEC. 2053. EXPENSES, INDEBTEDNESS, AND TAXES.

(a) GENERAL RULE.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

    \*        \*        \*        \*        \*        \*        \*

(3) for claims against the estate \* \* \*

(4) \* \* \* or any indebtedness in respect of, property where the value of the decedent's interest therein, \* \* \* is included in the value of the gross estate,

as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

    \*        \*        \*        \*        \*        \*        \*

(c) LIMITATIONS.—

(1) LIMITATIONS APPLICABLE TO SUBSECTIONS (a) and (b).—

(A) CONSIDERATION FOR CLAIMS.—The deduction allowed by this section in the case of claims against the estate, \* \* \* or any indebtedness shall, when founded on a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth; \* \* \*

[3] "13. The present value, at the date of decedent's death, of the life interest of Mary Bryan Hartshorne, then aged 66, in the trust created under Article THIRD of decedent's will, was computed by respondent in the amount of $83,231.17 and was allowed as a deduction in that amount [actually only $83,203.62 was allowed] as a debt under the agreement dated January 1, 1942. Petitioners agree in principle with this deduction but disagree with the manner of its computation in that:

"a. In arriving at the basic value of the trust the Commissioner has deducted $100,000. from one-third of the distributable estate, whereas petitioners contend the $100,000. should be deducted from the distributable estate with one-third of the balance representing the value of the trust. See paragraph SEVENTH of 'Joint Exhibit 8–H' [July 1, 1942 agreement].

"b. The additional amount of $13,239.41, referred to in paragraph 12 of this stipulation, should be added to the base amount on which said life interest was computed pursuant to paragraph EIGHTH of "Joint Exhibit 8–H" [July 1, 1942, agreement]."

value of the life estate to be $83,231.17. Petitioners in their reply brief agree with this computation *"except* we claim that there should be added to the 'net value of trust' [$258,594.33] the sum of $13,239.41 as an addition thereto required by Article Eighth of the 1942 agreement, by reason of transfers of assets made by decedent to other parties." [4] We fully agree with petitioners that, under the plain reading of paragraph Eighth of the July 1, 1942, agreement set out in our findings, the amount of $13,239.41 should be added to the net value of the trust of $258,594.33 before applying the life factor of 0.32186. When this is done the value of Mary's life estate becomes $87,492.41 instead of $83,231.17. With these preliminaries out of the way, we come to the principal and remaining issue, namely, "the deductibility of the value of the remainder interests under the testamentary trust for the benefit of the adult children of Mary and Harold." (Quoted matter from petitioners' reply brief.) The value of the remainder interests thus in dispute is $184,341.33, computed as follows:

| | |
|---|---:|
| Net value of trust | $258,594.33 |
| Add sum of | 13,239.41 |
| Corrected net value | 271,833.74 |
| Less Mary's life estate | 87,492.41 |
| Value of remainder interests | 184,341.33 |

As to the principal issue, petitioners contend that, because the settlement agreement of January 1, 1942, was ratified, confirmed, approved, and fully adopted by the Nevada court in its modified decree dated May 4, 1942, any alleged indebtedness arising out of the settlement agreement should be considered as founded upon the Nevada court decree rather than the "promise or agreement" mentioned in section 2053(c)(1)(A) of the statute, and as such is deductible from the gross estate under section 2053(a)(3), citing, among other authorities, *Harris* v. *Commissioner*, 340 U.S. 106 (1950); Rev. Rul. 60–160, 1960–1 C.B. 374; *Beecher* v. *United States*, 280 F. 2d 202 (C.A. 3, 1960); and *Estate of Robert Rodger Glen*, 45 T.C. 323, on appeal to C.A. 9.

In the *Harris* case, the Supreme Court held that the relinquishment of *marital rights* in property under a settlement agreement that was conditional upon the granting of a divorce by a court which had jurisdiction to settle the *property rights* of the parties in a divorce proceeding constituted adequate and full consideration for the transfer of the property. In Rev. Rul. 60–160, it was held that if a divorce court has power to decree a settlement of all *property rights* or to vary the terms

---

[4] In their reply brief, petitioners also state that:

"We depart from our position, indicated in paragraph 13, subdivision (a) of the Stipulation of Facts, that the $100,000. should be deducted from the distributable estate, rather than from the one-third share thereof, and we now accept respondent's treatment of this item. Our valuation of the trust, as claimed in the return, was based on deduction of this item from the distributable estate."

of a prior settlement agreement and, if the court does approve the agreement, any indebtedness arising out of such settlement is not considered to be founded on a promise or agreement; it is considered to be founded on such court decree and is, therefore, deductible from the gross estate.

Thus, it may be safely said that a claim based on a promise or agreement will be deemed to be supported by an adequate and full consideration if it springs from the divorce decree insofar as the decree effectively settles the *property rights* of the parties who are before the court.

On the other hand, it is the respondent's position that petitioners have failed to show that decedent's estate is entitled to deduct from decedent's gross estate the value of the trust created by paragraph Third A of decedent's will as a debt contracted for a full and adequate consideration in money or money's worth *except* to the extent of the value of Mary's life estate which we have found to be $87,492.41, and which life estate respondent concedes is deductible under the *Harris* and Rev. Rul. 60–160 rule. At the time of decedent's will, January 25, 1952, all three of the children born of the marriage of decedent and Mary were adults. The youngest of the three became 21 on December 30, 1949. Decedent died February 15, 1961. All during their minority, provision was made for their support. See paragraph Second of the January 1, 1942, agreement set out in our findings. Under this paragraph Mary was to receive 50 percent of the decedent's net income until James became 21 on October 11, 1944. Then she was to receive 45 percent of decedent's net income until Anne became 21 on January 8, 1948. Then she was to receive 40 percent of decedent's net income until Margaret became 21 on December 30, 1949. Thereafter, she was to receive 33⅓ percent of decedent's net income so long as she shall live or until she shall remarry. Under paragraph Seventh of the January 1, 1942, agreement, the decedent was to make provision in his will for a trust fund equal to one-third of his estate (excluding certain property and less the $100,000 placed in trust on December 31, 1941) "the income from which shall be payable to the party of the second part [Mary] for her natural life and the principal thereof upon her death in equal shares to the issue of the parties hereto." The decedent, in paragraph Third A of his will made January 25, 1952, *after the three children had reached adulthood,* complied with paragraph Seventh of the January 1, 1942, agreement and specifically stated in paragraph Third A that this was his intention to comply with paragraph Seventh of the January 1, 1942, agreement.

The respondent argues that since, at the time the decedent made his will, the three children were all adults, the remainder interest in the trust created by decedent's will was purely a testamentary

disposition by decedent to the natural objects of his bounty, and that inheritance rights are what are involved in this case rather than a claim founded upon a debt. He contends that this issue is controlled by the decisions and rationale of *Rosenthal* v. *Commissioner*, 205 F. 2d 505 (C.A. 2, 1953), reversing 17 T.C. 1047, for other reasons; *Karl T. Wiedemann*, 26 T.C. 565 (1956) ; *Estate of Hubert Keller*, 44 T.C. 851 (1965), and *Chemical Bank New York Trust Co.* v. *United States*, 249 F. Supp. 450 (S.D.N.Y. 1966).

It may be noted that some of the cases cited by both parties are gift tax cases but, as stated by the Supreme Court in *Harris* v. *Commissioner, supra:*

> The federal estate tax and the federal gift tax * * * are construed *in pari materia*, since the purpose of the gift tax is to complement the estate tax by preventing tax-free depletion of the tranferor's estate during his lifetime.

*Harris* v. *Commissioner, supra*, was a gift tax case. It did not, however, involve questions pertaining to adult children. Nevertheless, petitioners, in applying the *Harris* case to the facts of the instant case, contend in effect that the bequest of the remainder interest of the testamentary trust arises from the decree of the Nevada court and hence was not a voluntary transfer pursuant to the promise or agreement of January 1, 1942, and that, therefore, full and adequate consideration is an irrelevance. This argument of making the *Harris* rationale applicable to transfers to adult children has been rejected. In *Rosenthal* v. *Commissioner, supra*, the Court of Appeals for the Second Circuit said:

> The rationale of both the Harris and Converse decisions rests basically on the divorce court's power, if not duty, to settle property rights as between the parties, either by adopting their own agreement as in the Harris case, or by having the matter litigated as in the Converse case. *We do not find this rationale applicable to a decree ordering payments to adult offspring of the parties* or to minors beyond their needs for support—the only payments with which we are now concerned, since that part of the taxpayer's undertakings necessary for the support of his children during their minority is concededly not taxable. * * * While neither the Nevada statute, Nev. Comp. Laws §§ 9462, 9463 (Supp. 1931–1941),³ nor interpretive decisions indicate the precise limits of the divorce court's authority in this area, courts of other jurisdictions operating under similar statutes have been restricted in their power to make awards of property to children to amounts appropriate *merely for the maintenance of minor children.* * * * But since such a decree provision depends for its validity wholly upon the consent of the party to be charged with the obligation and thus cannot be the product of litigation in the divorce court, *we do not consider the rationale of the Harris decision applicable to the present case.* We therefore conclude that the arrangements here made for the taxpayer's daughters beyond their support during minority do not obtain exemption from the federal gift tax by simply receiving the court's imprimatur. * * * [Emphasis supplied. Footnote omitted.]

In *Karl T. Wiedemann, supra,* the taxpayer, pursuant to the provisions of a decree of divorce, established a trust, under the terms of which the net income was payable to his divorced wife for life and, upon her death, to their *adult* daughter. In holding that the value of the *remainder* interest transferred to the taxpayer's *adult* daughter was taxable as a gift, we said, *inter alia:*

> The rationale of the *Harris* case and those decisions which follow it is not, however, applicable here. As the Court of Appeals for the Second Circuit stated in *Rosenthal* v. *Commissioner, supra:* [Then followed the same quotation from the *Rosenthal* case set out above.]

In *Estate of Hubert Keller, supra,* the decedent, pursuant to a divorce decree, transferred a secondary life estate in certain property to his wife with the *remainder* to his two *adult* daughters. The Commissioner, as he did in the instant case, conceded that the transfer of the life estate to the wife was for an adequate and full consideration in money or money's worth and that the value thereof was not includable in decedent's gross estate, but contended that the remainder interest to the two *adult* daughters was not for an adequate and full consideration in money or money's worth, and that the value of the remainder interest was includable in decedent's gross estate. We sustained the Commissioner's contention. After several references to the *Harris* case and Rev. Rul. 60–160, *supra,* we said:

> But we do not think this "divorce as consideration" theory has yet been extended to provide a consideration for a transfer to third parties, not before the court in the divorce proceeding, simply because the divorce decree requires the transfer. It has been held that the fact that a settlement agreement was incident to a divorce does not necessarily preclude a donative intent for the transfer of property thereunder, nor require that the transfer automatically be deemed to have been for an adequate and full consideration. *Roland M. Hooker,* 10 T.C. 388, affd. 174 F. 2d 863. See *Karl T. Wiedemann,* 26 T.C. 565.
>
> \*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*
>
> To construe the statute as suggested by petitioner would open a means for a divorcing parent to transfer property to his adult children free of both gift tax and estate tax.

The respondent, in further support of his argument that neither the *Harris* rationale nor Rev. Rul. 60–160 is applicable to the facts presented in this case, calls our attention to the language in *Harris* and Rev. Rul. 60–160 which expressly provides that the divorce court must have the *power* to decree a settlement of property rights before any effect will be given to such a decree. He points out that the courts, in *Rosenthal* v. *Commissioner, supra,* and *Chemical Bank New York Trust Co.* v. *United States, supra,* both considered the Nevada statutes that are involved in the instant case and concluded that the Nevada divorce court was without power to make a disposition of property other than for the benefit of *minor* children. See our quotation from *Rosenthal.*

Petitioners also take the position that the January 1, 1942, agreement was the result of an arm's-length bargaining between the parties and that because of this fact the amount transferred to the testamentary trust pursuant to such agreement need not meet the quid pro quo scrutiny.

With respect to the quid pro quo argument, case law indicates that merely because a husband, in his divorce settlement agreement, makes transfers to his adult children, that fact alone does not mean that such transfers are made for consideration. After all, they are objects of his natural bounty; while the husband may have no desire to give the wife anything more than she would be entitled to under the local law, he may well desire to make generous transfers to the adult children. Such transfers, therefore, must be carefully examined to make sure that the husband undergoing divorce does not use the occasion to convey, in the divorce property settlement agreement, property to his adult children in avoidance of estate or gift taxes. Thus, the taxpayer must show that such transfers to adult children are made at the insistence of the wife and for consideration in money or money's worth. *Estate of Hubert Keller, supra; Karl T. Wiedemann, supra.*

We do not consider *Estate of Robert Rodger Glen, supra,* strongly relied upon by petitioners as holding to the contrary. In that case the decedent and his former wife, prior to a divorce, entered into a property settlement agreement pursuant to which the decedent created three trusts with corpora totaling $659,105.41. At that time decedent had personal property worth $1 million. His domicile was considered to be in Scotland. Under Scotch law his wife was entitled to one-third of his personal property upon divorce. In our opinion, among other things we said (pp. 344–345):

> The fact that divorce settlement transfers are made to persons other than the divorced spouse or minor children does not mean that they are not made for consideration. Such transfers are made for consideration if made at the insistence of the wife in complete or partial satisfaction of her rights on divorce and discharge of those rights, valuable in money or money's worth, is obtained by the husband. * * *
>
> Nonetheless, such transfers to third persons should be subject to close scrutiny, *especially when the third person is an adult child or other natural object of the transferor's bounty.* While a divorced husband may have no desire to give the wife anything more than she would be entitled to under local law, he may well desire to make generous transfers to other persons, especially his children, at the time of the divorce. * * * Thus, it is incumbent upon the taxpayer to prove in such a situation that transfers to (or for the benefit of) persons other than the divorced spouse were not made with donative intent and were made at the insistence of the divorced spouse in full or partial satisfaction of her rights *and that the transferor received money or money's-worth consideration for them.* * * * In view of the fact that decedent would have been liable to Jane under Scotch law at least in the amount of $333,333, and in view of the fact that Jane was asserting *her own rights* in bargaining with decedent for the creation of interests in the son, we hold here that $333,333 of the total amount transferred

to the three trusts created in contemplation of divorce was transferred for adequate consideration and that the balance was transferred with donative intent and without adequate consideration in money or money's worth. * * * [Emphasis supplied.]

In the instant case no evidence was produced by petitioners that Mary gave consideration for the children's rights. Under such circumstances, the customary presumption is that such evidence would not have favored petitioners. Under the agreement of January 1, 1942, the parties agreed in paragraph First that "This agreement shall supersede the judgment of separation dated February 4th, 1938, as modified and the parties hereto do stipulate that the said judgment may be cancelled and annulled and that the respective rights and liabilities of the parties hereto shall be as provided for herein and not otherwise." Under the February 4, 1938, judgment, as modified, Mary gave up alimony of $1,000 per month. In his reply brief, the respondent states:

Even assuming, but not conceding that the consideration given up by Mary Bryant Hartshorne was the $1,000 monthly payments awarded by the New York court, there is no indication that the $83,231.17 [$87,492.41] allowed did not fully cover the commuted value of these payments to her at the age of 66 years.

We agree with this statement.

In the instant case we agree with respondent that petitioners have failed to prove that there was adequate and full consideration in money or money's worth for the remainder interest of the testamentary trust created by paragraph Third A of decedent's will, and we so hold. *Beecher* v. *United States, supra,* is of no aid to petitioners for in that case it was stipulated "that the amounts payable to the two sons are founded upon an agreement for an adequate and full consideration in money or money's worth."

*Decision will be entered under Rule 50.*