ESTATE OF MAX KRISCHER, Deceased, MAZELLA AUSLANDER, Executrix, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Krischer v. Commissioner
Docket No. 5146-69.
United States Tax Court
T.C. Memo 1973-172; 1973 Tax Ct. Memo LEXIS 117; 32 T.C.M. (CCH) 821; T.C.M. (RIA) 73172; August 6, 1973, Filed Nathan R. Katz and Max A. Bratt for the petitioner. Fred L. Baker, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: The respondent determined a deficiency in the Federal estate tax of the Estate of Max Krischer in the amount of $55,832.69. Mazella Auslander, the decedent's daughter, is a duly qualified executrix of the extate. 2 Certain concessions having been made by petitioner, those issues remaining for our decision are as follows: (1) Whether the proceeds of certain life insurance policies are includable in decedent's gross estate under section 2042(a) [1] by virtue of his retention of incidents of ownership therein. *118 (2) Whether the fair market value of certain real estate owned by decedent, as of the alternate valuation date, was $25,000 as reported in the return, or $33,000 as determined by respondent. Some of the facts have been stipulated. The stipulation of facts, together with exhibits attached thereto, are incorporated herein by this reference. Max Krischer (hereinafter sometimes referred to as "decedent"), at the time of his death on May 14, 1965, 3 resided at 4500 Beach 45th Street, Seagate, Brooklyn, New York. He was survived by his wife, Rose Krischer, his daughter, Mazella Auslander, and his son, Irving Krischer. Mazella Auslander was duly appointed an executrix of the decedent's estate on June 21, 1965. A Federal estate tax return was timely filed with the district director of internal revenue at Brooklyn, New York, on September 13, 1966, showing a taxable estate in the amount of $210,745.37, and a net estate tax payable of $51,025.72. On April 8, 1927, Max Krischer purchased a life insurance policy from the New York Life Insurance Company, numbered 9 818 730, on his own life in the amount of $100,000. The annual premium for said policy was $3,808. On November 4, 1932, Max *119 Krischer purchased a second life insurance policy from the New York Life Insurance Company, numbered 11 918 538, on his own life in the amount of $50,000. The annual premium for said policy was $2,424. 4 In each of the years from 1945 to 1956, inclusive, the decedent obtained loans, renewals of loans, or additions to existing loans from Guaranty Trust Company of New York, now known as the Morgan Guaranty Company of New York (hereinafterreferred to as "Guaranty"), at interest rates ranging from 2 to 5 percent. At its inception each loan was secured by either the policy numbered 9 818 730 or 11 918 538, or both. Also, renewals of or additions to such loans were expressly made subject to an assignment of those policies to Guaranty as collateral. The assignments provided, in pertinent part: C. It is expressly agreed that the following specific rights, so long as the Policy has not been surrendered, are reserved and excluded from this assignment and do not pass by virtue hereof: 1. The right to collect from the Insurer any disability benefit payable in cash that does not reduce the amount of insurance, 2. The right to designate and change the beneficiary, 3. The right *120 to elect any optional mode of settlement permitted by the Policy or allowed by the Insurer, 5 but the reservation of these rights shall in no way impair the right of the Assignee to surrender the Policy completely with all its incidents or impair any other right of the Assignee hereunder, and any designation or change of beneficiary or election of a mode of settlement shall be made subject to this assignment and to the rights of the Assignee hereunder. D. This assignment is made and the Policy is to be held as collateral security for any and all liabilities of the undersigned, or any of them, to the Assignee, either now existing or that may hereafter arise in the ordinary course of business between any of the undersigned and the Assignee (all of which liabilities secured or to become secured are herein called "liabilities"). As of October 25, 1956, decedent had total loans outstanding from Guaranty secured by the two insurance policies in the principal amount of "$79,250. As of that date the total loan and cash surrender value of the policies numbered 9 818 730 and 11 918 538 was in excess of $90,850. On October 31, 1956, decedent transferred the life insurance policies *121 numbered 9 818 730 and 11 918 538 in equal shares to his children, Mazella Auslander and 6 Irving Krischer, and their respective spouses, Henry Auslander and Ruth Krischer. The assignments of said policies provided: FOR VALUE RECEIVED, I, being of legal age, hereby assign and transfer unto HENRY AUSLANDER, 1075 OCEAN PARKWAY, BROOKLY, N.Y., MAZELLA AUSLANDER, 1075 OCEAN PARKWAY, BROOKLYN, N.Y., IRVING M. KRISCHER, 627 AVENUE J, BROOKLYN, N.Y., AND RUTH KRISCHER, 627 AVENUE J, BROOKLYN, N.Y., IN EQUAL SHARES the Policy of Insurance known as No. * * * [9 818 730 and 11 918 538, respectively] issued by the NEW YORK LIFE INSURANCE COMPANY upon the life of MAX KRISCHER, and all dividend, benefit and advantage to be had or derived thereform, subject to the conditions of the said Policy, and the Rules and Regulations of the Company, and to any indebtedness to the New York Life Insurance Company against said Policy. THIS ASSIGNMENT IS SUBJECT TO THE ASSIGNMENT OF * * * [June 15, 1945 and April 29, 1949, respectively] IN FAVOR OF GUARANTY TRUST COMPANY OF NEW YORK. Dated, October 31, 1956 /s/ Max Krischer Gift tax returns were filed for the year 1956 reporting the transfer *122 of the policies by decedent and 7 his wife, Rose, who had consented to consider the gifts as having been made one-half by her and one-half by the decedent.No deduction was taken in the value of the policies for the outstanding indebtedness of the decedent secured by those policies. The policies numbered 9 818 730 and 11 918 538 were reported at a value of $64,354.71 and $29,296.66, respectively, for a total gift in the amount of $93,651.37. Following the transfer of said policies on October 31, 1956, additional loans secured by both of the policies were taken out by the decedent and renewals of existing loans of the decedent secured by the policies were made, as follows: 8 Date
Additional loans
Renewals
Amount
Maturity Date
Amount
Maturity date June 13, 1957
$12,500
Nov.12,1957
Oct. 24, 1957
7,500
April 24, 1958
Nov. 13, 1957
$14,000
May 12, 1958
53,000
May 12, 1958
12,500
May 12, 1958
Nov. 25, 1957
* 1,000
May 12, 1958
May 12, 1958
7,500
May 12, 1959
67,000
May 12, 1959
12,500
May 12, 1959
3,000
May 12, 1959
Nov. 24, 1958
4,000
May 12, 1959
May 12, 1959
11,500
May 12, 1960
67,000
May 12, 1960
12,500
May 12, 1960
3,000
May 12, 1960
Nov. 23, 1959
2,000
May 12, 1960
May 12, 1960
11,500
Nov. 14, 1960
69,000
Nov. 14, 1960
12,500
Nov. 14, 1960
3,000
Nov. 14, 1960
Nov. 14, 1960
11,500
May 15, 1961
69.000
May 15, 1961
12,500
May 15, 1961
3,000
May 15, 1961
*123 9 Immediately prior to November 15, 1962, the outstanding loans secured by the policies totalled $98,745.69. On November 15, 1962, such loans, then totalling $99,745.69, were renewed until May 15, 1963. Before the expiration of that period, the loans were again renewed until May 17, 1965. All of the foregoing loans were negotiated in the name of the decedent and all the evidence presented relative to such loans reflects correspondence between Guaranty and the decedent. Notwithstanding the testimony of petitioner's witness that the loans taken out after October 31, 1956 were at the request of the new owners of the policies, there is no documentation in support of the contention that their consent was required for such loans to have been made. At the time of decedent's death on May 14, 1965, the aggregate amount of the loans secured by the policies numbered 9 818 730 and 11 918 538 was $99,745.69. Said amount was paid to Guaranty by the estate and the bank released its collateral security interest in the policies. 10 The amount of $99,745.69 paid to Guaranty was claimed by the estate as a deduction for debts *124 of the decedent in Schedule K of the Federal estate tax return. That deduction was not challenged by respondent in the statutory notice of deficiency. At decedent's death, the face value of the life insurance policies numbered 9 818 730 and 11 918 538 was $150,000 and there were accumulated dividends and interest of $10,427.05. Those amounts were received by Mazella and Henry Auslander and Ruth and Irving Krischer, the owners and beneficiaries of the policies. In the Federal estate tax return filed on behalf of decedent's estate, the value of decedent's residence was reported as of the alternate valuation date to have been $25,000. In his notice of deficiency, the respondent determined that the residence had a vlaue as of such date in the amount of $33,000.
Said residence, located at 4500 Beach 45th Street, Seagate, Brooklyn, New York, was beach front property on a dead end street. Situated on the property, 11 approximately 45 feet by 123 feet, was a two-story brick two family house with a frame bungalow in the rear. The brick house was rather large, being in excess of 2,000 square feet. Said real estate was sold on June 6, 1972, by Mazella Auslander and Ruth Krischer, *125 individually and as executrix of the decedent's estate, to Solomon and Carol Zimmerman for $25,000. Carol Zimmerman is decedent's granddaughter. OPINION In the determination of the deficiency, the respondent included in the taxable estate of the decedent the proceeds of life insurance policies issued on the life of the decedent by the New York Life Insurance Company numbered 9 818 730 and 11 918 538 in the aggregate amount of $160,427.05. With respect to those policies, the respondent has determined that the decedent possessed incidents of ownership in the policies by virtue of his power 12 to pledge them as collateral for past and future loans, causing them to be includable in his gross estate pursuant to section 2042(2). [2]
*126 Policy numbered 9 818 730 was issued by the New York Life Insurance Company on April 8, 1927, to Max Krischer on his life in the amount of $100,000. Policy numbered 11 918 538 was issued by the New York Life Insurance Company on November 4, 1932, to Max Krischer on his life in the amount of $50,000. 13 Decedent continued to own each of the foregoing policies without restriction until October 31, 1956. In each of the years 1945 to 1956, the decedent enjoyed the full benefits of those policies, frequently exercising his right to pledge said policies as collateral for loans from Guaranty Trust Company of New York.In order to secure such loans it was necessary for the decedent to execute assignment forms which provided that "this assignment [was] made and the Policy [was] to be held as collateral security for any and all liabilities of the undersigned, * * * to the Assignee either now existing or that may hereafter arise in the ordinary course of business * * *." On October 25, 1956, just prior to decedent's transfer of the policies to his children and their spouses, the decedent had total loans outstanding from Guaranty secured by the two insurance policies in the amount *127 of $79,250. On October 31, 1956, decedent transferred said policies by assignments expressly made subject to the security agreements previously made in favor of 14 Guaranty Trust Company of New York. Thereafter, additional loans were made by Guaranty on the security of those policies. The petitioner contends that the gift made by decedent on October 31, 1956, constituted an absolute assignment of the ownership of the policies and served to divest him of all incidents of ownership therein. Petitioner further argues that it was the intention of the decedent that the policies should belong to the donees thereof and that any loans made with the policies as security following the date of their transfer were in reality those of the donees rather than of the decedent. The respondent, on the other hand, contends that the decedent possessed a valuable economic benefit in the life insurance policies since he reserved the right to have the policies continue as collateral security for loans secured prior to October 31, 1956, and, in addition, possessed the right to utilize the policies as collateral security for future loans. Those rights, he argues, constitute "incidents of ownership" *128 in the policies within the meaning of the statute. 15 Section 20.2042-1(c) (2), Estate Tax Regs., provides, in pertinent part: * * * the term "incidents of ownership" is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. * * * [emphasis supplied.] The above regulation has been cited with approval. See Commissioner v. Treganowan, 183 F. 2d 288 (C.A. 2, 1950), and Prichard v. United States, 397 F. 2d 60 (C.A. 5, 1968. Indeed, the facts than in the case before this Court. Petitioner, while not contesting that the right to pledge the policy for a loan constitutes an incident of ownership, argues that the decedent's intent was at all times that the policies should belong to his children. In support of that argument we are directed *129 16 to the testimony of the executrix who stated that the loans secured after 1956 were in fact those of the children and not of the decedent. We must reject this argument. By giving the policies to the children subject to the prior assignment to Guaranty, the decedent effectively retained the right to use the policies as collateral security for his personal loans then outstanding. The petitioner has failed to show that the loans secured after 1956 were not in fact debts of the decedent. The loans were properly claimed and allowed as such. Even if the proceeds of those loans may have gone to decedent's children who may have in fact paid the interest thereon, the decedent's intended or actual use of the funds is not controlling. Furthermore, there is absolutely no documentation of those allegations. In fact, what documentary evidence does not appear in the record indicates to the contrary. Accordingly, we are constrained to hold that the value of the policies must be included in the gross estate of the decedent. 17 We must also hold that the value to be included is $160,427.05. Section 20.2042-1(a) (3), Estate Tax Regs., states that "the amount to be included in the *130 gross estate under section 2042 is the full amount receivable under the policy." The amount receivable is not limited to the face amount of the policies but must also include accumulated dividends and interest to the date of death. See Estate of Michael Collino, 25 T.C. 1026 (1956). With respect to the valuation of decedent's residence at 4500 Beach 45th Street, Seagate, Brooklyn, New York, the respondent has determined that said property had a value on May 14, 1966, the alternate valuation date elected by the estate, in the amount of $33,000. In support of a valuation of $25,000 reported in the estate tax return of the decedent, the petitioner points to the sale of the residence for $25,000 some 7 years after decedent's death. With respect to this issue, petitioner has failed to carry the burden of proof. A sale of the residence in 1972 is not determinative of the value as of the 18 alternate valuation date in 1966. Estate of Harold Hartshorne, 48 T.C. 882 (1967), affirmed on other issue, 402 F. 2d 592 (C.A. 2, 1968). Furthermore, the sale in question was to a member of decedent's family, which in itself is not a measure of value. *131 Petitioner introduced no independent appraisal or expert testimony in respect of such value. The respondent's determination must therefore be sustained. In accordance with the foregoing, Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
*. Secured only by the policy numbered 11 918 538. ↩
2. SEC. 2042. PROCEEDS OF LIFE INSURANCE. The value of the gross estate shall include the value of all property - * * * (2) Receivable by other beneficiaries. - To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. * * * ↩